STATE OF CONNECTICUT *v.* JOHN E. GUNDEL
(AC 18475)

Foti, Spear and Cretella, Js.

Argued November 2, 1999—officially released March 7, 2000

*Gary A. Mastronardi*, for the appellant (defendant).

*Marjorie Allen Dauster*, assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Nicholas J. Bove, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

CRETELLA, J. The defendant, John E. Gundel, appeals from the trial court's denial of his motion to withdraw his pleas of nolo contendere. Pursuant to Practice Book § 39-27 (3),[1] the defendant claims that the sentence ultimately imposed exceeded that which he reasonably believed had been previously accepted by the court as a result of a plea agreement with the state. The defendant further claims that the court improperly denied him an evidentiary hearing.[2] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of this appeal. The defendant resided at 57 Park Street in Stratford. He was accused of sexual assault on several members of a neighbor's family. On February 26, 1998, pursuant to a plea bargain

[1] Practice Book § 39-27 provides in relevant part that one of the "grounds for allowing the defendant to withdraw his or her plea of guilty after acceptance [is that] . . . (3) The sentence exceeds that specified in a plea agreement which had been previously accepted . . . ."

[2] The defendant appealed to this court initially raising three issues: (1) that his pleas were entered without adequate knowledge of the nature of the charges to which the nolo contendere pleas were entered; (2) that the sentence ultimately imposed by the court exceeded that which he reasonably believed had been previously accepted by the court in a plea agreement; and (3) his pleas resulted from the denial of effective assistance of counsel. In his argument before this court, the defendant withdrew the first and third issues. This appeal, therefore, only relates to the second issue.

reached with the state,[3] the defendant entered pleas of nolo contendere[4] to a substitute information charging him with two counts of unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a)[5] and two counts of assault in the third degree in violation of General Statutes § 53a-61 (a) (1).[6] The sentence imposed pursuant to the plea agreement, and as recommended by the state, was to be five years incarceration, execution suspended after ninety days, with three years probation. This appeal relates to one of the two conditions of probation imposed by the court.

At the start of the plea proceeding on February 26, 1998, the prosecutor recommended a sentence of five years incarceration, execution suspended after ninety days, with three years probation. The prosecutor also set forth the conditions of the defendant's probation as follows: (1) "He is to have no initiated contact whatsoever with . . . any member of the [victims'] family residing at 35 Park Street in Stratford," and (2) "once his probation commences and once he is sentenced, he is to leave his residence at 57 Park Street in Stratford, Connecticut."

The defendant did not object to or seek correction of any of the terms or conditions of the plea bargain as recited by the prosecutor. The court inquired whether the defendant was to receive any psychological treatment or evaluation to which the state responded,

---

[3] Prior to the defendant accepting the plea bargain, the state fully discussed the disposition with the victims' parents.

[4] The defendant stipulated that there was a factual basis for the pleas.

[5] General Statutes § 53a-95 (a) provides: "A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury."

[6] General Statutes § 53a-61 (a) provides in relevant part: "A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person . . . ."

"No, Your Honor. One of the reasons for the pleas to these charges was to avoid those types of conditions." Defense counsel then informed the court that the state's description was "an accurate statement regarding the proposed disposition."

After the court had concluded the standard line of questioning for a plea canvass,[7] the following colloquy transpired:

[7] Following the defendant's approval of the prosecutor's stated conditions, the trial court continued its canvass of the defendant:

"The Court: Mr. Gundel, did you plead nolo contendere freely and voluntarily today and not as a result of any threats or promises in any way?

"[The Defendant]: Yes, sir.

"The Court: You are satisfied with the advice you received from your lawyer and you've had adequate opportunity to review this file with him?

"[The Defendant]: Yes, Your Honor.

"The Court: Mr. Gundel, do you understand that by your pleas today you gave up certain rights that you have, such as your right to a trial by a court or a jury, your right to remain silent, not to incriminate yourself, your right to present evidence on your own behalf, your right to confront your accusers and require the state to prove the charges against you beyond a reasonable doubt in order to convict you, and your right to take an appeal at [the] end of the case if you had been found guilty? You realize you gave up those rights by your plea?

"[The Defendant]: Yes, Your Honor.

"The Court: Did you have an adequate opportunity to review the essential elements of each of these crimes with your attorney so you understand in each instance what the state would have had to prove beyond a reasonable doubt in order to convict you of them?

"[The Defendant]: Yes, Your Honor.

"The Court: Are you on probation or parole at the present time?

"[The Defendant]: No, Your Honor.

"The Court: Do you understand that I could have given you five years on each of the unlawful restraints in the first degree, another two years on each of the assault threes [and that] I could have run all those consecutive to one another so that the maximum penalty I could have imposed based on your pleas would have been [fourteen] years of incarceration? Do you understand that?

"[The Defendant]: Yes, Your Honor. . . .

"The Court: Do you understand that once I accept your plea, Mr. Gundel, you will not be able to withdraw it without my permission?

"[The Defendant]: Yes, sir.

"The Court: Have you understood each question I've asked you?

"[The Defendant]: Yes, Your Honor.

"The Court: Mr. Gundel, when you appear before me for sentencing, which will be on April 30th, your sentence will be five years in the state's penitentiary, suspended after ninety days. You'll be placed under the supervision of the office of adult probation for a period of three years. Special conditions of probation: (1) No initiated contact with any members of the [victims'] family. You heard the names before, but at the time of sentencing I'll outline them each individually, (2) And that you leave your—and *not live or be present at . . .* [your] residence located at 57 Park Street, Stratford, Connecticut. That's the plea negotiation; is that the way you understood it, sir?

"[Defense Counsel]: May I have just one second, Your Honor?

"The Court: Yes. [A sidebar conference took place between the court, defense counsel and the state.]

"[Defense Counsel]: Sorry, Your Honor. We are prepared to proceed.

"The Court: All right. . . . Mr. Gundel, I think that really covered all the questions that I had for you. Do you have any questions of me now?

"[The Defendant]: No, Your Honor. . . .

"The Court: And that's the plea negotiation as you *understood* it; is that correct?

"[The Defendant]: Yes, sir.

"The Court: Then I'll see you on April 30th for sentencing." (Emphasis added.)

---

"The Court: Do you have any questions of me?

"[The Defendant]: No. . . .

"The Court: The court will find that the plea is freely, intelligently [and] voluntarily made with full understanding of the crimes charged after adequate, effective assistance of counsel."

Thereafter, by a motion filed March 19, 1998, the defendant moved to withdraw his pleas pursuant to Practice Book § 39-27 (3). At sentencing,[8] defense counsel raised his concerns with the court regarding the second condition of probation and requested a continuance so that counsel could file a brief or memorandum of law in support of the motion to withdraw the defendant's pleas.[9]

The state objected to any continuance because the present disposition, that of pleading to offenses that were not sex crimes to avoid sex offender treatment in exchange for jail time, was the suggestion of the defendant and because he had no constitutional or other basis for claiming that he did not understand the plea disposition. Defense counsel conceded that what the state claimed was not in dispute, but argued that the court's interpretation of the provision "to leave," as including never being present at the defendant's residence, was different from what the defendant had agreed to and offered to present evidence in that regard. Defense counsel argued that the defendant always had understood that the condition of probation would include that he not reside at his former residence, but that the defendant was not aware that the condition also required that he not be present there. Defense counsel then suggested that the court might need to go "beyond the transcript" of the February 26, 1998 proceeding to take into account the discussion at the sidebar conference that took place immediately after the court stated the second condition of probation. The state suggested that if the defendant sought any modification of the condition of probation he could address

---

[8] Although the sentencing was set for April 30, 1998, it did not occur until May 12, 1998.

[9] Defense counsel did not have a memorandum in support of his motion to withdraw his pleas on that day for reasons that, as the trial court acknowledged, were beyond his control.

that particular issue in the future. The court agreed with the state and proceeded with the sentencing, noting that the victims' family members were all present in court. After reviewing the transcript, which the court had ordered relating to the initial canvassing, the court determined that there was no reason for a continuance.

The court's interpretation of the second condition of probation, that the defendant *not live or be present at* his residence on Park Street, is the crux of this appeal. According to the court, the defendant, after serving his three month sentence, was not only required, as a condition of probation, to move out of his residence at 57 Park Street but was prohibited from even visiting his wife and stepdaughter at that same address. The defendant claims that when he signed the plea agreement he believed he was able to visit the house either to see his wife and stepdaughter or to "fix a leak" if one happened to occur. The court, however, had explained that the condition of probation was that the defendant "leave . . . and not live or be present at 57 Park Street." The court then asked the defendant if "that's the plea negotiation as [he] . . . understood it," to which the defendant responded, "Yes, sir." The defendant argues that he believed that the sidebar conference, which was held immediately after the explanation of the second condition but before he agreed to the terms, clarified that condition of probation in his favor. The defendant claims that when the court asked if "that's the plea negotiation as [he] . . . *understood* it"; (emphasis added); he answered yes because he interpreted the word understood to be referring to how he had understood the agreement throughout plea negotiations, namely, that he was to leave and *no longer reside at 57 Park Street.*

I

The defendant first claims that the court improperly denied his motion to withdraw his pleas. Specifically,

he claims that the sentence ultimately imposed exceeded that which previously had been agreed to and accepted. We disagree.

"A guilty plea, once accepted, may be withdrawn only with the permission of the court. . . . The court is required to permit the withdrawal of a guilty plea upon proof of any ground set forth in Practice Book § [39-27]. . . . Whether such proof is made is a question for the court in its sound discretion, and a denial of permission to withdraw is reversible only if that discretion has been abused." (Citations omitted; internal quotation marks omitted.) *State* v. *Cooper*, 55 Conn. App. 95, 104, 738 A.2d 1125, cert. denied, 251 Conn. 922, 742 A.2d 360 (1999).

The essence of the defendant's claim is that the ambiguity created by the court's use of the past tense (understood), rather than the present tense (understand), along with the defendant's alleged understanding of the condition of probation throughout negotiations, should have constituted an adequate basis for the court to permit the defendant to withdraw his pleas. The defendant claims, therefore, that the court abused its discretion in denying the motion to withdraw his pleas.

The defendant claims that the word understood in the court's inquiry, "And that's the plea negotiation as you understood it," was referring to the condition as he claims to have interpreted it throughout the negotiations, namely, that he is not to *reside* at 57 Park Street. After the proceeding ended, however, the defendant became aware that the court's use of the past tense (understood) referred to the condition as the court had just stated it and, therefore, claimed that the sentence ultimately imposed by the court exceeded that which had been agreed to previously. Although the defendant places great importance on the difference in tense, we do not agree.

"In considering the evidence introduced in a case, [triers of fact] are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge or their own observations and experience of the affairs of life, but, on the contrary, to apply them to the facts in hand, to the end that their action may be intelligent and their conclusions correct." (Internal quotation marks omitted.) *L & R Realty* v. *Connecticut National Bank*, 53 Conn. App. 524, 535–36, 732 A.2d 181, cert. denied, 250 Conn. 901, 734 A.2d 984 (1999). It is apparent from the transcript that the court reasonably could have found that the defendant knew that the court's inquiry, "And that's the plea negotiation as you understood it," referred to the court's explanation of the second condition as it had just stated it; hence, when the defendant responded, "Yes, sir," he was agreeing to leave and not be present at 57 Park Street. Furthermore, under the circumstances, the court's findings make common sense. It is reasonable to believe that the court could draw the inference that when the defendant was told he must *leave*, at the beginning of the proceeding, he understood that he was not to be physically present at his former residence; his residence was in the vicinity of the victims' residence, and the defendant was a threat to the children in his neighborhood. It makes no common sense to interpret the phrase "to leave" the way the defendant claims he did; it would be impossible for the office of adult probation to enforce this condition if the defendant were allowed to visit the house at his pleasure.

Moreover, this condition, as stated by the court, neither prevented the defendant from seeing his family, which could visit him at his new residence, nor did it prevent him from seeing to repairs of his former residence.[10] It does, however, prevent him from initiat-

---

[10] The defendant could hire someone to fix the repairs.

ing contact with the victims' family, which, by applying the principles of common sense to the phrase "to leave," given the circumstances of the crime, is consistent with the rehabilitative purpose of the probation under which the defendant's conduct would be governed. Furthermore, despite his protestations, the defendant agreed to those conditions of probation in exchange for what amounted to an extremely lenient sentence with a short time of confinement.

We conclude, therefore, that the record does not support the defendant's claim that the sentence ultimately imposed exceeded that which had been accepted. The court, therefore, did not abuse its discretion by denying the defendant's motion to withdraw his pleas.

II

Assuming the evidence is insufficient to grant the defendant's motion to withdraw his pleas, the defendant's final claim is that the court abused its discretion in denying him an evidentiary hearing to determine if his plea was knowing and voluntary. We disagree.

"In considering whether to hold an evidentiary hearing on a motion to withdraw a guilty plea the court may disregard any allegations of fact, whether contained in the motion or made in an offer of proof, which are either conclusory, vague or oblique. For the purpose of determining whether to hold an evidentiary hearing, the court should ordinarily assume any specific allegations of fact to be true." *State* v. *Torres*, 182 Conn. 176, 185, 438 A.2d 46 (1980). "An evidentiary hearing is not required if the record of the plea proceeding and other information in the court file conclusively [establish] that the motion is without merit." Id.

As discussed previously, the record conclusively establishes that there was no basis for the defendant's motion to withdraw his pleas. Hence, based on the facts

and the law addressed previously, we conclude that the court reasonably could have found that the defendant was fully aware of his pleas. The court therefore did not abuse its sound discretion in denying the defendant an evidentiary hearing.

The judgment is affirmed.

In this opinion the other judges concurred.