STATE OF CONNECTICUT *v.* DELROY
ANTHONY WEBB
(AC 19525)

Schaller, Dranginis and Stoughton, Js.

Submitted on briefs December 11, 2000—officially released April 17, 2001

*Robert E. Lancaster, Carroll L. Lucht, Christine Lehmann*, law student intern, *Laura Fernandez*, law student intern, and *Sarah Sundell*, law student intern, filed a brief for the appellant (defendant).

*Eugene Callahan*, state's attorney, *James M. Ralls*, assistant state's attorney, and *Steven Weiss*, supervisory assistant state's attorney, filed a brief for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Delroy Anthony Webb, appeals from the judgment of conviction, rendered after

he entered his guilty plea under the *Alford* doctrine,[1] of possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (b)[2] and altering a manufacturer's serial number in violation of General Statutes § 53-132a.[3] On appeal, the defendant claims that the trial court improperly (1) denied his motion to vacate the judgment and to withdraw his guilty plea, and (2) refused to conduct an evidentiary hearing on that motion. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The defendant, who is not a citizen of the United States, resided in an apartment located in Stamford. After receiving information that the defendant was selling marijuana from his apartment, the police executed a search and seizure warrant for his apartment on June 20, 1997. They seized ten plastic bags of marijuana, containing approximately ten grams, and twenty-five plastic bags of marijuana, containing approximately forty grams. The police also seized the

---

[1] See *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). "A defendant who pleads guilty under the *Alford* doctrine does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea." *Henry* v. *Commissioner of Correction*, 60 Conn. App. 313, 315 n.1, 759 A.2d 118 (2000).

[2] General Statutes § 21a-277 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with intent to sell or dispense, possesses with intent to sell or dispense, offers, gives or administers to another person any controlled substance, except a narcotic substance, or a hallucinogenic substance other than marijuana, except as authorized in this chapter, may, for the first offense, be fined not more than twenty-five thousand dollars or be imprisoned not more than seven years or be both fined and imprisoned; and, for each subsequent offense, may be fined not more than one hundred thousand dollars or be imprisoned not more than fifteen years, or be both fined and imprisoned."

[3] General Statutes § 53-132a provides in relevant part: "No person shall remove, deface, alter or obliterate any manufacturer's serial number on any manufactured product with intent to prevent the tracing or identification of such product or shall knowingly sell, offer for sale, or purchase any such product whose manufacturer's serial number has been removed, defaced, altered or obliterated with intent to prevent the tracing or identification of such product."

defendant's birth certificate and passport, $448 in cash, and two pagers and a cellular telephone, which had its serial number removed.

On July 24, 1997, the defendant entered a guilty plea under the *Alford* doctrine to the charges of possession of narcotics with intent to sell and altering a manufacturer's serial number. Before accepting the defendant's plea, the court conducted a plea canvass in which it notified the defendant of all of the rights he would be waiving by pleading guilty.[4] Pursuant to General Statutes § 54-1j (a),[5] the court also informed the defendant of the possible deportation consequences resulting from his guilty plea. The following colloquy occurred:

"The Court: If you're not a citizen of the United States, you are advised that a conviction of the offense for which you are charged may have consequences of deportation, denial of naturalization or exclusion from the United States. Do you realize once the court accepts your plea, you can't take it back without the permission of the court?

"The Defendant: Yes, sir.

"The Court: Do you have any questions at all concerning any of your rights?

[4] The court began the canvass as follows:

"The Court: You realize that even though you're pleading under the protection of *North Carolina* [v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970)], you're giving up your right to continue to plead not guilty, to be tried by a judge or jury, your right to remain silent, your right to confront your accusers, your right to present evidence on your own behalf and your right to take an appeal should you be found guilty at the end of trial. Do you realize you're giving up those rights?

"The Defendant: Yes, sir."

[5] General Statutes § 54-1j (a) provides: "The court shall not accept a plea of guilty or nolo contendere from any defendant in any criminal proceeding unless the court advises him of the following: 'If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States.' "

"The Defendant: Your Honor—

"The Court: Any questions?

"The Defendant: Your Honor—

"The Court: Oh, I'll explain what a cap means. It's a—

"[Defense Counsel]: Well, no, he understands that. It's just that he mentioned the birth certificate and passport."

After the court addressed the defendant's concern to his satisfaction about the return of those items, it accepted his guilty plea. On September 26, 1997, the court sentenced the defendant to a total effective sentence of three years. Subsequently, the United States Immigration and Naturalization Service initiated removal proceedings against the defendant pursuant to § 237 of the Immigration and Nationality Act. 8 U.S.C. § 1101 et seq.

On February 19, 1999, almost seventeen months after sentencing occurred, the defendant filed a motion to vacate the judgment and to withdraw his guilty plea. During oral argument, the defendant asked the court for an evidentiary hearing to prove his claim that his plea was invalid because the court had failed to advise him properly concerning the immigration consequences of his plea as mandated by § 54-1j (a). He also claimed that his plea was not entered voluntarily and knowingly, thereby violating his rights to due process. After hearing oral argument, the court denied the defendant's request for an evidentiary hearing on his motion. This appeal followed.

I

The defendant first claims that the court improperly denied his motion to vacate the judgment and to withdraw his guilty plea. According to the defendant, he was entitled to withdraw his guilty plea because (1) the

court did not properly "advise" him of the deportation consequences of his guilty plea as mandated under § 54-1j, (2) his guilty plea was not entered knowingly and voluntarily as required by the federal due process clause of the fourteenth amendment to the United States constitution,[6] and (3) his guilty plea was not entered knowingly and voluntarily as mandated by Practice Book § 39-27 (2).[7] The state, in response, argues that the defendant's first claim is without merit, and that he did not properly preserve his second and third claims for review, as he filed his motion after the imposition of the sentence.

A

As a threshold matter, we must determine whether the defendant's claims are reviewable due to the untimely filing of the motion. Practice Book § 39-26 provides in relevant part: "A defendant may not withdraw his or her plea *after* the conclusion of the proceeding at which the sentence was imposed." (Emphasis added.) Our courts have held that "[b]ecause Practice Book § [39-26] precludes a defendant from withdrawing his plea after the conclusion of sentencing, [t]he failure of the defendant to make a motion to withdraw his plea before the conclusion of the proceeding at which the sentence was imposed ordinarily precludes review of claimed infirmities in the acceptance of a plea." (Internal quotation marks omitted.) *State* v. *Garvin*, 43 Conn. App. 142, 159, 682 A.2d 562 (1996), aff'd, 242 Conn. 296,

---

[6] The defendant also claims a violation of his due process rights under article first, § 8, of the constitution of Connecticut. He has not, however, provided an independent analysis of such a claim. Accordingly, we do not address that claim. See *State* v. *Pinder*, 250 Conn. 385, 389 n.4, 736 A.2d 857 (1999).

[7] Practice Book § 39-27 provides in relevant part: "The grounds for allowing the defendant to withdraw his or her plea of guilty after acceptance are as follows . . . (2) The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed . . . ."

699 A.2d 921 (1997), citing *State* v. *Martin,* 197 Conn. 17, 21, 495 A.2d 1028 (1985).

There are, however, two exceptions to that rule. First, review of the claim is allowable if the legislature grants the defendant the right to withdraw his plea after the time of sentencing. See *State* v. *Soares,* 57 Conn. App. 149, 748 A.2d 331 (2000) (although defendant did not file motion to withdraw guilty plea until after sentencing, court nonetheless reviewed claim, as it involved legislative authorization of defendant to withdraw plea beyond time of sentencing); see also *State* v. *Boulier,* 49 Conn. App. 702, 705, 716 A.2d 134 (1998) ("jurisdiction of . . . court terminates when the sentence is put into effect, and that court may no longer take any action . . . unless it has been expressly authorized to act"). Second, as with unpreserved claims raised on appeal after a trial, review of an unpreserved claim involving a guilty plea is allowable in cases in which the defendant asserts a constitutional claim that satisfies the requirements of *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[8] See *State* v *Domian,* 235 Conn. 679, 685, 668 A.2d 1333 (1996); *State* v. *Lugo,* 61 Conn. App. 855, 860–61, 767 A.2d 1250, cert. denied, 255 Conn. 955, 772 A.2d 153 (2001); *State* v. *Williams,* 60 Conn. App. 575, 578, 760 A.2d 948, cert. denied, 255 Conn. 922, 763 A.2d 1043 (2000).

---

[8] Under *Golding,* "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. (Emphasis in original.) [*State* v. *Golding,* supra, 213 Conn. 239–40]. The first two conditions are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself. . . . We may . . . dispose of the claim by focusing on the condition that appears most relevant under the circumstances of the case." (Internal quotation marks omitted.) *State* v. *Burrus,* 60 Conn. App. 369, 374–75, 759 A.2d 149 (2000), cert. denied, 255 Conn. 936, 767 A.2d 1214 (2001).

Because the defendant in this case did not file his motion to withdraw his guilty plea until approximately seventeen months after his sentencing, we must examine the unpreserved claims to determine whether they are nonetheless subject to review under one of the exceptions previously noted. As for the defendant's first claim regarding § 54-1j, the legislature has specifically authorized defendants to withdraw their guilty pleas beyond the time of sentencing. General Statutes (Rev. to 1997) § 54-1j (c)[9] provides in relevant part that "[i]f the court fails to advise a defendant as required in subsection (a) of this section and the defendant later at any time shows that his plea and conviction may have one of the enumerated consequences, the court, on the defendant's motion, shall vacate the judgment, and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty. . . ." (Emphasis added.) We conclude, therefore, that the defendant's first claim challenging his guilty plea on the basis of § 54-1j is reviewable, despite the fact that he did not file the motion until approximately seventeen months after sentencing.

The defendant's second and third unpreserved claims regarding whether he entered his guilty plea knowingly and voluntarily do not involve legislative authority allowing defendants to withdraw their guilty pleas beyond the time of sentencing. Instead, those unpreserved claims involve alleged due process violations, which may be reviewed if they satisfy the requirements of *State* v. *Golding*, supra, 213 Conn. 239–40. The defendant, however, has not requested that we review those claims under *Golding*. "In the absence of such a request, we have, in the past, declined to review a defendant's claim under similar circumstances." (Internal quotation

---

[9] Section 54-1j (c) has been amended to limit the time in which the defendant may show that his plea and conviction have an enumerated consequence to three years from the acceptance of his plea.

marks omitted.) *State* v. *Delgado*, 50 Conn. App. 159, 175, 718 A.2d 437 (1998), citing *State* v. *Casado*, 42 Conn. App. 371, 374, 680 A.2d 981, cert. denied, 239 Conn. 920, 682 A.2d 1006 (1996). Accordingly, we decline to grant review of the defendant's second and third unpreserved claims under *Golding*.

### B

Having determined that only the defendant's claim challenging his guilty plea on the basis of § 54-1j is reviewable, we now turn to that claim. The defendant claims that the court improperly denied his motion to vacate the judgment and to withdraw his guilty plea because it did not properly advise him of the deportation consequences of his guilty plea as mandated under § 54-1j. He argues that the term "advises," as used in the statute, required the court to do something more than passively read or recite the relevant language of the statute. According to the defendant, the term "advises" required the court to actively interact with the defendant and to engage in a colloquy to ensure that he fully understood the deportation consequences of his guilty plea. We are not persuaded.

"Statutory construction is a question of law and therefore our review is plenary. . . . If the language of a statute is plain and unambiguous, courts need look no further than the words used because courts assume that the language expresses legislative intent. . . . When a statute does not define a term, it is appropriate to look to the common understanding expressed in the law and in dictionaries." (Citations omitted; internal quotation marks omitted.) *Funaro* v. *Baisley*, 57 Conn. App. 636, 638, 749 A.2d 1205, cert. denied, 254 Conn. 902, 755 A.2d 218 (2000).

Section 54-1j (a) provides in relevant part: "The court shall not accept a plea of guilty or nolo contendere from any defendant in any criminal proceeding unless

the court *advises* him of the following . . . ." (Emphasis added.) Because the term "advises" is not defined in the statute, we look to the common understanding of it. As defined in the dictionary, the term "advise" means "to give advice to . . . counsel . . . caution, warn . . . recommend . . . to give information or notice to: inform, apprise . . . ." Webster's Third New International Dictionary. We cannot conclude, in light of its ordinary definition, that the term "advises," as used in the statute, places an affirmative duty on courts to engage in a colloquy with defendants to ensure that they fully understand the deportation consequences of their guilty pleas. To the contrary, we conclude that the term "advises" in § 54-1j simply requires courts to inform defendants of the potential deportation consequences of their guilty pleas.

After reviewing the record, we are convinced that the court adequately informed the defendant of the deportation consequences of his guilty plea pursuant to § 54-1j. The court recited, almost precisely, the language provided in the statute. We also note that the defendant has not claimed that the court improperly read the language of the statute or that he did not understand the words used.[10] Under those circumstances, we conclude

[10] In addition, we note that the court actually went further than merely reciting the language of the statute by affirmatively inquiring of the defendant whether he understood the consequences of his guilty plea. The colloquy was as follows:

"The Court: If you're not a citizen of the United States, you are advised that a conviction of the offense for which you are charged may have consequences of deportation, denial of naturalization or exclusion from the United States. Do you realize once the court accepts your plea, you can't take it back without the permission of the court?

"The Defendant: Yes, sir."

Because the court's inquiry directly followed its advisement regarding the deportation consequences, the court was obviously inquiring whether the defendant understood the deportation consequences of his guilty plea. Hence, even if we were to accept the defendant's interpretation of the term "advises," the court did comply with that definition in that it affirmatively asked the defendant whether he understood the consequences of his plea.

that the court properly denied the defendant's motion to vacate the judgment and to withdraw his guilty plea as he was advised properly of the deportation consequences of his guilty plea pursuant to § 54-1j.

## II

The defendant also claims that the court abused its discretion in denying him an evidentiary hearing to determine whether he was advised properly of the deportation consequences of his guilty plea as mandated by § 54-1j.[11] Specifically, he argues on the basis of his interpretation of the statute, as discussed in part I, that an evidentiary hearing was required to determine whether he understood the deportation consequences that the court recited to him pursuant to the statute. We disagree.

We begin by noting our standard of review governing a court's decision to grant an evidentiary hearing with respect to guilty pleas. Such a decision is committed to the sound discretion of the court and will be overturned only on a showing of an abuse of discretion. See *State* v. *Gundel*, 56 Conn. App. 805, 815, 746 A.2d 204, cert. denied, 253 Conn. 906, 753 A.2d 941 (2000).

"In considering whether to hold an evidentiary hearing on a motion to withdraw a guilty plea the court may disregard any allegations of fact, whether contained in the motion or made in an offer of proof, which are either conclusory, vague or oblique. For the purpose of determining whether to hold an evidentiary hearing, the court should ordinarily assume any specific allegations of fact to be true. *State* v. *Torres*, 182 Conn. 176,

---

[11] The defendant also claims that the court abused its discretion in denying him an evidentiary hearing to determine whether his plea was made knowingly and voluntarily. Because we declined to review such claims in part I, we need not address them here. Accordingly, we address only the court's denial of the request for an evidentiary hearing with respect to the defendant's claim involving § 54-1j.

185, 438 A.2d 46 (1980). An evidentiary hearing is not required if the record of the plea proceeding and other information in the court file conclusively [establish] that the motion is without merit." (Internal quotation marks omitted.) *State* v. *Gundel*, supra, 56 Conn. App. 814.

In the present case, information in the record conclusively establishes that there was no merit to the defendant's motion to withdraw his guilty plea. The defendant again relies on his misinterpretation of § 54-1j. The court was under no obligation based on the law previously discussed to engage in a colloquy with the defendant to ensure that he understood the deportation consequences recited to him by the court pursuant to § 54-1j. We also reiterate that the defendant was not claiming that he did not understand the words recited by the court. We conclude, therefore, that the court did not abuse its discretion in denying the defendant an evidentiary hearing to determine whether, under § 54-1j, he was advised properly of the deportation consequences of his guilty plea.

The judgment is affirmed.

In this opinion the other judges concurred.