## STATE OF CONNECTICUT *v.* TAURUS DAVENPORT (AC 31784)

DiPentima, C. J., and Harper and Alvord, Js.

Argued October 25, 2010—officially released April 12, 2011

*Morgan P. Rueckert*, with whom was *Moira L. Buckley*, for the appellant (defendant).

*Kathryn Ward Bare*, assistant state's attorney, with whom, on the brief, were *Patricia M. Froehlich*, state's attorney, and *Edward R. Azzaro*, assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Taurus J. Davenport, appeals from the judgment of conviction rendered after he pleaded guilty under the *Alford* doctrine[1] to one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). The defendant claims that his conviction should be reversed and the case should be remanded so that he may withdraw his plea because the trial court improperly accepted his plea without first complying with the mandates of General Statutes § 54-251 (a) and ensuring that he understood that he would be required to register as a sex offender as a consequence of his plea. We agree.

The record reveals the following facts and procedural history that are relevant to the resolution of the defendant's claim on appeal. On September 23, 2009, the defendant entered a plea of guilty under the *Alford* doctrine to one count of risk of injury to a child in violation of § 53-21 (a) (2). On December 2, 2009, the defendant was sentenced to ten years of imprisonment, execution suspended, with ten years of probation. The defendant also was required to register as a sex offender

---

[1] See *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

pursuant to § 54-251 for a period of ten years. On December 22, 2009, the defendant filed a notice of appeal, a motion for stay of probation and sex offender registration pending appeal, and a motion to correct an illegal sentence. On January 15, 2010, the court granted the defendant's motion to stay probation and sex offender registration pending appeal. The defendant subsequently withdrew his motion to correct an illegal sentence. At no point did the defendant file a motion to withdraw his guilty plea.

The defendant claims that the trial court erred in failing to comply with the provisions of § 54-251 (a) by accepting his guilty plea without adequately informing him that he would be required to register as a sex offender as a consequence of his plea. The defendant contends that because the court failed to comply with § 54-251 (a), his conviction should be reversed and his case remanded so that he may withdraw his plea. We agree.

As an initial matter, we must address the defendant's failure to properly preserve his claim by filing a timely motion to withdraw his plea pursuant to Practice Book § 39-26. "Practice Book 39-26 provides in relevant part: A defendant may not withdraw his or her plea *after* the conclusion of the proceeding at which the sentence was imposed. . . . Our courts have held that [b]ecause Practice Book § [39-26] precludes a defendant from withdrawing his plea after the conclusion of sentencing, [t]he failure of the defendant to make a motion to withdraw his plea before the conclusion of the proceeding at which the sentence was imposed ordinarily precludes review of claimed infirmities in the acceptance of a plea." (Emphasis in original; internal quotation marks omitted.) *State* v. *Webb*, 62 Conn. App. 805, 810, 772 A.2d 690 (2001). The defendant, however, seeks redress of his claim under the plain error doctrine.[2]

---

[2] The defendant also requests that this court exercise its supervisory authority to review his claim, or in the alternative, review his claim under

"[The plain error] doctrine, codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. [T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . Implicit in this very demanding standard is the notion . . . that invocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review. . . . [Thus, an appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Citations omitted; internal quotation marks omitted.) *State* v. *Myers*, 290 Conn. 278, 289, 963 A.2d 11 (2009).

"[W]e recently clarified the two step framework under which we review claims of plain error. First, we must determine whether the trial court in fact committed an error and, if it did, whether that error was indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also

the doctrine set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Because we find that plain error exists, we need not address these requests.

. . . obvious in the sense of not debatable. . . . [T]his inquiry entails a relatively high standard, under which it is not enough for the defendant simply to demonstrate that his position is correct. Rather, the party seeking plain error review must demonstrate that the claimed impropriety was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal. . . .

"In addition, although a clear and obvious mistake on the part of the trial court is a prerequisite for reversal under the plain error doctrine, such a finding is not, without more, sufficient to warrant the application of the doctrine. Because [a] party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice . . . under the second prong of the analysis we must determine whether the consequences of the error are so grievous as to be fundamentally unfair or manifestly unjust. . . . Only if both prongs of the analysis are satisfied can the appealing party obtain relief." (Internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 205, 982 A.2d 620 (2009).

Although not a per se rule; see *State* v. *Myers*, supra, 290 Conn. 290 n.10; both this court and our Supreme Court have often found plain error in instances where a trial court failed to comply with the mandatory requirements of an applicable statute. See, e.g., *Genovese* v. *Gallo Wine Merchants, Inc.*, 226 Conn. 475, 480 n.6, 628 A.2d 946 (1993) ("[i]t is plain error for a trial court to fail to apply an applicable statute, even in the absence of the statute having been brought to its attention by the parties"); *State* v. *Burke*, 182 Conn. 330, 331–32, 438 A.2d 93 (1980) ("[w]here the legislature has chosen specific means to effectuate a fundamental right, failure to follow the mandatory provisions of the statute is plain error"); *State* v. *Ellis*, 32 Conn. App. 849, 853, 632 A.2d 47 (1993) (trial court's failure to

comply with applicable rule of practice constituted plain error).

The defendant claims that the trial court committed a clear and obvious mistake by failing to comply with the requirements of § 54-251 (a) and that, as a result of this failure, his conviction under § 53-21 (a) (2) is manifestly unjust. Pursuant to § 54-251 (a), a person who is convicted of a "criminal offense against a victim who is a minor" is required to register as a sex offender. A "criminal offense against a victim who is a minor," as the term is used in § 54-251 (a), includes a violation of "subdivision (2) of subsection (a) of section 53-21 . . . ." General Statutes § 54-250 (2). Thus, the defendant's conviction under § 53-21 (a) (2) subjected him to the registration requirements of § 54-251 (a). Section 54-251 (a) provides in relevant part: "Prior to accepting a plea of guilty or nolo contendere from a person with respect to a criminal offense against a victim who is a minor or a nonviolent sexual offense, the court shall (1) inform the person that the entry of a finding of guilty after acceptance of the plea will subject the person to the registration requirements of this section, and (2) determine that the person fully understands the consequences of the plea." Therefore, pursuant to § 54-251 (a), prior to accepting the defendant's plea, the court was required to both inform him that an entry of a finding of guilty after accepting his plea would subject him to the sex offender registry requirements and determine that he fully understood those consequences of his plea.[3]

---

[3] Neither party contests that the requirements of § 54-251 (a) are mandatory. We note that such an interpretation is consistent with the plain language of the statute in light of the fact that the word "shall" is juxtaposed with the substantive action verbs "inform" and "determine," thus indicating that the provisions of the statute are mandatory. See *Wiseman* v. *Armstrong*, 295 Conn. 94, 101, 989 A.2d 1027 (2010) ("the word shall creates a mandatory duty when it is juxtaposed with [a] substantive action verb" [internal quotation marks omitted]).

A thorough review of the transcript of the plea hearing reveals that, contrary to the requirements of § 54-251 (a), the court did not inform the defendant that he would be required to register as a sex offender prior to accepting his guilty plea. Although the court inquired as to whether the defendant had discussed penalties that attached to his offenses with his attorney, to which the defendant responded affirmatively, the court never informed the defendant that he would be required to register as a sex offender as a consequence of his guilty plea, or inquired as to whether he was aware that sex offender registration was a consequence of his plea. During the ongoing canvass immediately following the acceptance of the defendant's plea, the following colloquy took place:

"The Court: All right. . . . I'm going to make the following findings: I'm going to find that your plea is entered knowingly and voluntarily and it's also entered intelligently. You understand the penalty of the crime that you've pled guilty to, as well as the penalties and consequences of entering that plea. I'm going to find that you have received adequate advice and effective assistance of competent counsel. I'm going to find a factual basis for the plea. The plea is hereby accepted, a finding of guilty is made.

"The court does hereby order the preparation of a presentence investigation. Now . . . the agreement is that you're going to receive a sentence of ten years suspended, ten years probation.

"The Defendant: Yes.

"The Court: All right. And that's the only promise or inducement that's been made to you in order to have you plead guilty?

"The Defendant: Yes. The only thing, I was trying to avoid the—the, you know, the register—to register

because, like I said, I want to continue to try to prevent this problem. And I want to deal with the kids. I'm really qualified to do it. That's the field I should have been in, but I like volunteering to do that. That's just something I like to do, so—

"The Court: Okay. All right.

"The Defendant: So—

"The Court: But I—I think a plea under this section, sir—

"The Defendant: I understand.

"The Court: —makes the registration mandatory—

"The Defendant: Yeah.

"The Court: —if I'm thinking of the right section. And I'm quite sure that that's something [your attorney][4] has already considered—

"The Defendant: Yeah.

"The Court: —in trying [to] work out a deal for you. All right. So, are you going back to Florida at this point . . . ?

\* \* \*

"The Court: You always have a right to modify the conditions of your probation.

"The Defendant: Okay.

"The Court: The registration part, though, that, you should speak to [your attorney] about because—

"The Defendant: Okay.

"The Court: —that's a trickier issue.

"The Defendant: All right.

---

[4] The record reflects that during the plea proceedings the defendant was represented by attorney Matthew S. Davis.

"The Court: Okay. It's not an issue that I can give you a simple answer to cause there is no simple answer to it.

"The Defendant: I understand.

"The Court: All right. Any more questions, sir?

"The Defendant: No, sir.

"The Court: December 2 for sentencing.

"The Defendant: Thank you."

The defendant claims, and we agree, that the court's statements did not satisfy the requirements of § 54-251 (a). Although the court mentioned the sex offender registry requirements during the ongoing canvass, its discussion was not sufficient to satisfy the mandate of § 54-251 (a). The court's statement that it thought registration was mandatory if it was "thinking of the right section" and its assertion that there was "no simple answer" to the question of whether the defendant would be required to register, were not adequate to inform the defendant that he would be required to register as a sex offender or to ensure that he fully understood the consequences of his plea, as is required by § 54-251 (a). Thus, under the first step of our plain error analysis, we conclude that the trial court erred by not adequately complying with the requirements of § 54-251 (a) and that such error is obvious in the sense that it is not debatable.

Turning to the second step of our analysis, we conclude that, under the unique circumstances of this case, the court's failure to comply with the requirements of § 54-251 (a) constitutes "one of the truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings" and

thereby warrants reversal under the plain error doctrine. (Internal quotation marks omitted.) *State* v. *Fagan*, 280 Conn. 69, 87, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007).

In the present case, the error went beyond merely failing to comply with the requirements of § 54-251 (a). Rather, during the canvass, the defendant informed the court that one of the reasons he was entering his plea was to avoid the requirement that he register as a sex offender. By doing so, the defendant brought the issue of registration to the attention of the trial court and explicitly indicated to the court his fundamental misunderstanding about the consequences of his guilty plea. In response to this statement, the court, rather than expressly informing the defendant that he would, in fact, be required to register as a consequence of his plea, essentially told the defendant that it was unsure if registration was a consequence of the plea. Therefore, in the present case, the court not only failed to comply with the requirements of § 54-251 (a), but failed to do so even after the issue had been raised and the court had been informed that the defendant was entering his plea on the mistaken belief that doing so would allow him to avoid the registry requirements. We conclude that, under the unique circumstances of this case, not reversing the conviction would result in manifest injustice to the defendant and, thus, the court's failure to comply with the requirements of § 54-251 (a) constituted plain error.

The judgment is reversed and the case is remanded with direction to allow the defendant to withdraw his guilty plea and for further proceedings in accordance with law.

In this opinion the other judges concurred.