STATE OF CONNECTICUT *v.* FANNY IRALA
(AC 19874)

Landau, Mihalakos and Freedman, Js.

Argued September 14, 2001—officially released March 5, 2002

*James A. Wade,* with whom, on the brief, was *Linda H. Kolodny,* for the appellant (defendant).

*Susan C. Marks,* supervisory assistant state's attorney, with whom, on the brief, were *Eugene J. Callahan,* state's attorney, and *Paul Ferencek,* senior assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Fanny Irala,[1] appeals from the trial court's judgments of conviction, which were rendered following the denial of her motions, filed pursuant to Practice Book § 39-27,[2] to withdraw her pleas of nolo contendere to two counts of larceny in the third degree in violation of General Statutes § 53a-

---

[1] The defendant has changed her name to Fanny I. Flecha.

[2] Practice Book § 39-27 provides in relevant part: "Grounds for Allowing Plea Withdrawal

"The grounds for allowing the defendant to withdraw his or her plea after acceptance are as follows:

"(1) The plea was accepted without substantial compliance with Section 39-19;

"(2) The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed . . .

"(4) The plea resulted from the denial of effective assistance of counsel . . . ."

124. On appeal, the defendant claims that by denying her motions, the court abused its discretion because her pleas were made unknowingly and involuntarily. In support of that claim, the defendant asserts that (1) the court's plea canvass was defective because it did not comply strictly or substantially with Practice Book §§ 39-9, 39-19 and 39-20, (2) the court misadvised her under General Statutes § 54-1j on the deportation consequences of her pleas, and (3) her attorney at the plea hearing rendered ineffective assistance of counsel during the court's plea canvass and in relation to the deportation consequences of her pleas. We disagree with the defendant's contentions and conclude that her pleas were made knowingly and voluntarily. Accordingly, we affirm the judgments of the trial court.

The following facts and procedural history are relevant to the disposition of the defendant's appeal. The defendant entered the United States in 1988 and remained illegally after her tourist visa expired. In succession, the defendant found work in Greenwich with two families and, while with the second family, retained an immigration attorney to pursue legal residency. On February 22, 1997, while the defendant's residency application remained pending, the Greenwich police arrested her after she was found in possession of more than $25,000 worth of clothing and jewelry belonging to the two families. The police charged the defendant with one count of forgery in the third degree, which was not pursued, and two counts of larceny in the first degree. Thereafter, the defendant retained attorney Allen Williams III to represent her on the charges.

As a result, on November 17, 1997, the defendant pleaded nolo contendere to two counts of larceny in the third degree. The terms of the plea bargain subjected the defendant to a maximum period of incarceration of three years with the right to argue for a sentence of straight probation pursuant to General Statutes § 53a-

39a. The court canvassed the defendant and accepted her pleas as being made knowingly and voluntarily with the assistance of competent counsel.[3] The court also

[3] The transcript of the plea canvass states in relevant part:

"The Court: You want to withdraw the nolo plea and you want to make it [a plea under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970)]?

"[Defense Counsel]: No, excuse me, Your Honor. We'll stay with the— we'll stay with the no contest plea.

"The Court: Very well. Anything else, gentlemen?

"[Prosecutor]: No, sir.

"[Defense Counsel]: No.

"The Court: What's the cap that's—

"[Prosecutor]: A cap of three years.

"The Court: All right. Is that your understanding, Mr. Williams?

"[Defense Counsel]: Yes, it is, Your Honor.

"The Court: Is that your understanding, Ms. Irala?

"The Defendant: Yes, it is.

"The Court: Have you taken any drugs, medication or alcohol today, which might affect your judgment?

"The Defendant: No, sir.

"The Court: Do you understand what's going on here today?

"The Defendant: Yes, sir.

"The Court: Have you had an opportunity to go over it, go over everything, with your lawyer, Mr. Williams?

"The Defendant: Yes, sir.

"The Court: Has he reviewed with you the elements of the crimes you are charged with here, and the maximum and minimum for that crime? Has he done that?

"The Defendant: Yes.

"The Court: Can you confirm you've done that, Mr. Williams?

"[Defense Counsel]: Yes, I have.

"The Court: Are you presently on probation or parole?

"The Defendant: No.

"The Court: Do you understand that by entering your nolo plea today, you're giving up several rights: The right to remain silent, the right to continue to plead not guilty, the right to a court or a jury trial, the right to present witnesses on your own behalf, the right to cross-examine the state's witnesses and the right to have the state prove you guilty beyond a reasonable doubt at a trial. Do you understand you're giving up all of those rights here today?

"The Defendant: Yes, I do.

"The Court: Has anybody threatened you or forced you in any way to enter your plea?

"The Defendant: No.

"The Court: Are you doing so then of your own free will?

ordered a presentence investigation and set a sentencing date in March, 1998.

"The Defendant: Yes, Your Honor.

"The Court: Do you understand that if you are not a U.S. citizen, these pleas could result in your deportation, exclusion from the United States or a denial of naturalization? Do you understand that?

"The Defendant: Yes, I do.

"The Court: Do you understand that by entering your nolo plea you are not contesting the facts just given to me by the state's attorney? Do you understand that?

"The Defendant: Yes.

"The Court: The state or defense counsel know of any reason why I should not accept the plea?

"[Prosecutor]: No sir, Your Honor.

"[Defense Counsel]: No, I do not.

"The Court: [Presentence investigation] waived?

"[Defense Counsel]: No, Your Honor. We would like to have a [presentence investigation].

"The Court: You want a [presentence investigation]?

"[Defense Counsel]: And also, Your Honor, as a part of that [presentence investigation], I would be requesting the alternative incarceration plan . . . .

"The Court: Do you have any problem with [the alternative incarceration plan] here?

"[Prosecutor]: No sir, Your Honor.

"The Court: Very well. The court will find the plea to be knowingly and voluntarily made with the assistance of competent counsel. There's a factual basis for each of the pleas. The pleas are accepted. Findings of guilty may enter. The case will be continued for sentencing. The court will order [that] a presentence investigation be prepared as part thereof. Request [that an] alternative incarceration plan be prepared as well. What date would you like to use for sentencing, gentlemen?

"[Defense Counsel]: I'm requesting March 17, 1998, Your Honor. We have reason for that. I've discussed it with [the prosecutor]."

"The Court: Okay. The one thing you have to understand, I'm willing to give you the time, the appropriate time frame here. But if your client—I assume she's out. If she does not end up being here on the date in question for sentencing, if she misses the sentencing date, I will freely, in addition to being charged with failure to appear in the first degree for which she can be sent to state's prison for up to five years, I will feel free to sentence her to the maximum term for each of the [charges of larceny in the third degree] for which she has entered pleas here today. That would be a total maximum period of incarceration of fifteen years in the state's prison system. Do you understand that, ma'am?

"The Defendant: Yes, I do.

"The Court: You understand you have to show up for sentencing then?

"The Defendant: Yes, I do.

On March 17, 1998, the defendant, who had retained new counsel, filed motions prior to sentencing to withdraw her pleas on the basis of a defective trial court canvass.[4] On September 4, 1998, the court denied the motions orally and without prejudice, reasoning that under the totality of the circumstances, the court's canvass of the defendant was in substantial compliance with Practice Book § 39-19 and that her pleas had been made knowingly and voluntarily. Nonetheless, the court granted the defendant permission to supplement her motions with briefs addressing issues concerning deportation and ineffective assistance of counsel by attorney Williams.

On December 21, 1998, the defendant filed a motion for reconsideration.[5] On January 4, 1999, the defendant again retained new counsel, who on January 26, 1999, filed a motion to set aside her nolo contendere pleas, requesting that she be permitted to withdraw her pleas and that the case be set for trial. That motion was based on claims of ineffective assistance of counsel by Williams, and a defective plea canvass due to the court's misstatement of the immigration consequences to the defendant and its failure to comply with the rules of practice regarding a plea canvass. On March 3, 1999, the court denied the defendant's motion for reconsideration

"The Court: All right. Do you agree to that, ma'am?

"The Defendant: Yes, I do.

"The Court: All right. Very well. The record will so reflect that [she has] been so advised."

[4] The defendant's motion was brought pursuant to Practice Book § 711, now § 39-19.

[5] The defendant requested that the court reconsider its decision denying her motion to withdraw her pleas. In support of the motion, the defendant reiterated her claim that the court had failed to comply strictly with the mandatory provisions of Practice Book § 39-20 by not determining whether the pleas resulted from prior discussions between the state and defense counsel. The defendant claimed further that substantial compliance with Practice Book § 39-20 was legally insufficient because the terms of that provision are mandatory.

and her motion to withdraw her nolo contendere pleas with respect to her claim of failure to comply with the rules of practice. On May 13, 1999, however, the court held an evidentiary hearing regarding the ineffective assistance of counsel claim. Still later, on June 11, 1999, the court heard further oral argument addressing that claim and the claim that the court had misstated the deportation consequences to the defendant under § 54-1j.

On July 9, 1999, the court denied the defendant's motion to withdraw her nolo contendere pleas as to her remaining claims related to § 54-1j and ineffective assistance of counsel. In its memorandum of decision, the court reasoned that the defendant had failed to meet her burden of proof that her pleas were made unknowingly and involuntarily. Although the court deemed the defendant's claim constitutional in nature, it concluded, on the basis of uncontroverted testimony by the defendant's immigration attorney and its own analysis of the law, that federal immigration law did not mandate deportation as a consequence of the defendant's pleas.[6] In turn, the court concluded that § 54-1j correctly stated current federal law and that the defendant had conceded that the requirements of § 54-1j were met. Further, the court concluded, on the basis of a variety of case law, that no due process violation occurred in this case because trial courts are not consti-

---

[6] The court arrived at its conclusion regarding federal immigration law partially through an independent analysis of the Immigration and Nationality Act (act). See 8 U.S.C. § 1101 et seq. The act appears to mandate removal proceedings and eventual removal of aliens who have pleaded nolo contendere to an "aggravated felony" as that term is defined in the act. See 8 U.S.C. §§ 1101 (a) (43) (G) and 1227 (a) (2) (A) (iii). The act also appears, however, to allow exceptions to removal, even for aliens who have pleaded nolo contendere to an "aggravated felony." See 8 U.S.C. §§ 1255 and 1182. Nevertheless, we need not and do not rule on whether the court's conclusion is correct as to the implications of the act on deportation because General Statutes § 54-1j does not require an analysis of federal immigration law. See part II and footnote 23.

tutionally required to advise defendants of collateral federal deportation consequences for pleas of nolo contendere, but rather courts must advise defendants only of direct consequences of such pleas. Finally, crediting the testimony of the immigration attorney and Williams over that of the defendant, the court concluded that Williams had provided sufficiently effective assistance of counsel by calling the defendant's immigration attorney to discuss the consequences of her pleas, especially since the defendant had expressed to Williams that she was not concerned about the consequences, as she already intended to return to Paraguay, where she is a citizen. Thereafter, the court sentenced the defendant to three years of incarceration, the execution of which was suspended, and three years of probation for each larceny count. This appeal followed on July 30, 1999. Additional facts and procedural history will be provided as necessary.

As a threshold matter, we must outline the applicable standard of review that governs our examination of the defendant's claims. The defendant claims that the court improperly denied her motion to withdraw her pleas of nolo contendere, pursuant to Practice Book § 39-27,[7] on the grounds that her pleas were made unknowingly and involuntarily, without adequate compliance with the rules of practice and the applicable statute, and without the effective assistance of counsel. See Practice Book § 39-27 (1), (2) and (4). "The burden is always on the defendant to show a plausible reason for the withdrawal of a plea . . . ." (Internal quotation marks

[7] Guilty pleas and pleas of nolo contendere are treated by this court, for purposes of review, in much the same manner. Both types of pleas cannot be withdrawn unless a defendant proves one of the six grounds for withdrawal under Practice Book § 39-27. See Practice Book §§ 39-26 and 39-27. Therefore, the same standard of appellate review set out in case law for a court's denial of a motion to withdraw a guilty plea is used to review a court's denial of a motion to withdraw a plea of nolo contendere. See Practice Book § 39-26.

omitted.) *State* v. *Andrews*, 253 Conn. 497, 505–506, 752 A.2d 49 (2000). Nevertheless, "[i]t is axiomatic that unless a plea . . . is made knowingly and voluntarily, it has been obtained in violation of due process and is therefore voidable. . . . A plea . . . cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." (Internal quotation marks omitted.) *State* v. *Lugo*, 61 Conn. App. 855, 861–62, 767 A.2d 1250, cert. denied, 255 Conn. 955, 772 A.2d 153 (2001); see *State* v. *Childree*, 189 Conn. 114, 119, 454 A.2d 1274 (1983), citing *McCarthy* v. *United States*, 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969).

Further, when a defendant pleads nolo contendere she "waives important fundamental constitutional rights, including the privilege against self-incrimination, the right to a jury trial, and the right to confront [the defendant's] accusers. . . . These considerations demand the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure [the defendant] has a full understanding of what the plea connotes and its consequences. *Boykin* v. *Alabama*, [395 U.S. 238, 243–44, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969)]." (Citation omitted; internal quotation marks omitted.) *State* v. *Garvin*, 242 Conn. 296, 310, 699 A.2d 921 (1997). For those reasons, a trial court must confirm on the record that a defendant's plea was made intelligently and voluntarily. Id. At the appellate level, a "determination as to whether a plea has been knowingly and voluntarily entered entails an examination of all of the relevant circumstances." (Internal quotation marks omitted.) Id. Moreover, while engaged in that review, we are mindful that the defendant's plea is not rendered unknowing and involuntary even if she holds a "less than perfect understanding [of an aspect of the] situation . . . ." *D'Amico* v. *Manson*, 193 Conn. 144, 154, 476 A.2d 543 (1984).

It is well settled also that a nolo contendere plea, once accepted, "may be withdrawn only with the permission of the court. . . . The court is required to permit the withdrawal of a . . . plea upon proof of any ground set forth in Practice Book § [39-27]. . . . Whether such proof is made is a question for the court in its sound discretion, and a denial of permission to withdraw is reversible only if that discretion has been abused." (Internal quotation marks omitted.) *State* v. *Gundel*, 56 Conn. App. 805, 812, 746 A.2d 204, cert. denied, 253 Conn. 906, 753 A.2d 941 (2000); *State* v. *Morant*, 20 Conn. App. 630, 633, 569 A.2d 1140, cert. denied, 215 Conn. 818, 576 A.2d 547 (1990). "In determining whether the trial court [has] abused its discretion, this court must make every reasonable presumption in favor of [the correctness of] its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Internal quotation marks omitted.) *State* v. *Williams*, 65 Conn. App. 59, 84, 782 A.2d 149, cert. denied, 258 Conn. 923, 782 A.2d 1251 (2001). We note, however, that "a court's discretion to grant or deny a withdrawal of a plea does not apply to cases where the record does not show that the defendant's plea was voluntary and intelligent at the time it was entered. . . . A plea which is invalid ab initio because of a deprivation of due process does not become any more valid after sentence is imposed and the sentencing proceeding has concluded." (Citation omitted.) *State* v. *Schaeffer*, 5 Conn. App. 378, 386, 498 A.2d 134 (1985). Within that general framework of review, we now address each of the defendant's claims in turn.

I

COMPLIANCE WITH THE RULES OF PRACTICE

The defendant first contends that the court's plea canvass was defective in that it did not comply strictly

or substantially[8] with Practice Book §§ 39-9,[9] 39-19[10] and 39-20.[11] Specifically, the defendant claims that the court failed to determine whether she understood the applica-

---

[8] The defendant argues on appeal that the plea canvass was defective because the court neither strictly nor substantially complied with Practice Book §§ 39-9, 39-19 and 39-20. Although the defendant originally argued to the trial court only lack of strict compliance, her modified claims were preserved by her timely motion to set aside her pleas, and we will review them under the umbrella of her involuntary plea claim and the standard of law we now apply to such claims under *State* v. *Ocasio*, 253 Conn. 375, 751 A.2d 825 (2000), which was decided while this case remained pending, and other case law. The *Ocasio* decision applies retroactively here because so doing will not produce substantial inequitable results and because our Supreme Court did not stipulate that it should apply prospectively only. See *State* v. *Quinones*, 56 Conn. App. 529, 533, 745 A.2d 191 (2000).

[9] Practice Book § 39-9 provides: "Continuance for Sentencing

"If the case is continued for sentencing, the judicial authority shall inform the defendant that a different sentence from that embodied in the plea agreement may be imposed on the receipt of new information or on sentencing by another judicial authority, but that if such a sentence is imposed, the defendant will be allowed to withdraw his or her plea in accordance with Sections 39-26 through 39-28."

[10] Practice Book § 39-19 provides: "Acceptance of Plea; Advice to Defendant

"The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands:

"(1) The nature of the charge to which the plea is offered;

"(2) The mandatory minimum sentence, if any;

"(3) The fact that the statute for the particular offense does not permit the sentence to be suspended;

"(4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and

"(5) The fact that he or she has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he or she has the right to be tried by a jury or a judge and that at that trial the defendant has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself."

[11] Practice Book § 39-20 provides: "Ensuring That the Plea is Voluntary

"The judicial authority shall not accept a plea of guilty or nolo contendere without first determining, by addressing the defendant personally in open court, that the plea is voluntary and is not the result of force or threats or of promises apart from a plea agreement. The judicial authority shall also inquire as to whether the defendant's willingness to plead guilty or nolo

ble maximum sentence, whether the plea resulted from prior discussions between the state and the defense counsel and whether she was aware that she could withdraw her pleas if a continuance for sentencing resulted in a different sentence than that agreed upon in the plea agreement. As a result, the defendant contends that her pleas were made unknowingly and involuntarily and that, therefore, the court improperly denied her motion to withdraw the pleas and order a trial. We disagree.

As an initial matter, we conclude that the defendant's claims that the court did not comply strictly with §§ 39-19 and 39-20 are without merit.[12] Our courts have held repeatedly that "only substantial compliance is required when warning the defendant of the direct consequences of a . . . plea pursuant to Practice Book § 39-19 in order to ensure that the plea is voluntary pursuant to Practice Book § 39-20." *State* v. *Malcolm*, 257 Conn. 653, 662, 778 A.2d 134 (2001), citing *State* v. *Ocasio*, 253 Conn. 375, 380, 751 A.2d 825 (2000). In *State* v. *Ocasio*, supra, 378–79, our Supreme Court traced the case law that establishes that only substantial compliance is required in relation to Practice Book § 39-19. Moreover, our Supreme Court concluded in that case that Practice Book § 39-20 was governed by a substantial, rather than a literal, compliance standard as well. *State* v. *Ocasio*, supra, 379–81. Therefore, as determined in a case-by-case evaluation, only substantial compliance with those rules of practice is necessary to arrive at the conclusion that the defendant's pleas were made knowingly and voluntarily, and that the court therefore

contendere results from prior discussions between the prosecuting authority and the defendant or his or her counsel."

[12] The defendant has conceded as much in her reply brief in which she notes the guiding principles of *State* v. *Ocasio*, 253 Conn. 375, 379–80, 751 A.2d 825 (2000) (substantial compliance with Practice Book §§ 39-19, 39-20 all that is required for defendant's plea to be valid).

did not abuse its discretion in denying the defendant's motion.

A

Although we apply a substantial compliance test, what constitutes substantial compliance with Practice Book § 39-19 differs from substantial compliance with Practice Book § 39-20. To determine whether the court substantially complied with Practice Book § 39-19, we must consider "whether accurate information would have made any difference in [a defendant's] decision to enter [a] plea." (Internal quotation marks omitted.) *State* v. *Domian,* 235 Conn. 679, 688, 668 A.2d 1333 (1996); see *State* v. *Ocasio,* supra, 253 Conn. 380–81. In the present case, the defendant contends that her pleas were made involuntarily because the court failed to determine, prior to accepting the pleas, whether the defendant understood the maximum sentence that could result from her pleas and that, by implication, without this failure the defendant would have elected to not enter her pleas. See Practice Book § 39-19 (4). With similar claims in past cases, reviewing courts have looked to the record for statements made by the trial court concerning the maximum sentence, and for any indications revealing that a defendant was aware of and understood those statements. See *State* v. *James,* 197 Conn. 358, 364–65, 497 A.2d 402 (1985); *State* v. *Bowden,* 53 Conn. App. 243, 252, 729 A.2d 795 (1999).

In contrast to the defendant's claim, the record reveals that the court asked the defendant whether she reviewed the plea process with her attorney. The court asked the defendant whether she "had an opportunity to . . . go over everything [with Williams.]" See footnote 3. The court also inquired of the defendant more specifically as follows: "Has [Williams] reviewed with you the elements of the crimes you are charged with here, and the maximum and minimum for that crime?"

Id. The court also asked the defendant, by listing each right, whether she understood that she was giving up her rights by entering her pleas. Id. The defendant responded affirmatively to each of those questions. The court confirmed also that the defendant was aware of and understood that the plea agreement allowed for a "cap of three years" and that the defendant was acting of her own free will. Id. Although the court may not have expressly mentioned the maximum sentence to the defendant prior to accepting her pleas, that singular fact is not dispositive of the defendant's claim.[13] See *State* v. *Silva*, 65 Conn. App. 234, 242, 783 A.2d 7, cert. denied, 258 Conn. 929, 783 A.2d 1031 (2001); see *State* v. *Gray*, 63 Conn. App. 151, 159, 772 A.2d 747, cert. denied, 256 Conn. 934, 776 A.2d 1151 (2001). "[T]he constitutional mandate is not strict adherence to the rule but, rather, an understanding by the defendant of the actual sentencing possibilities." (Internal quotation marks omitted.) *State* v. *Domian*, supra, 235 Conn. 689. Furthermore, a court is permitted to rely on a defendant's responses during a plea canvass. See *State* v. *Johnson*, 253 Conn. 1, 40, 751 A.2d 298 (2000), citing *Bowers* v. *Warden*, 19 Conn. App. 440, 443, 562 A.2d 588, cert. denied, 212 Conn. 817, 565 A.2d 534 (1989). In this case, the court found the defendant's responses to be especially reliable.[14] The defendant acknowledged

[13] The present case differs markedly from the facts in *James* and *Bowden*, where the records apparently were void of any indication that the court had complied with Practice Book § 39-19. The court here inquired about the defendant's understanding of the maximum sentence prior to accepting her pleas. The defendant's argument that the court only mentioned the maximum sentence after the pleas were accepted, in the context of admonishing the defendant to ensure her appearance at sentencing, is therefore incorrect.

[14] In its September 4, 1998 ruling denying the defendant's motion to withdraw her pleas, the court found that it had reviewed the plea agreement with the defendant and specifically inquired of her whether her counsel, who was known to the court because of many prior appearances, had reviewed the elements of the charges with her, and the maximum and minimum penalties related to those charges. The court also found that the defendant had "appeared to the court to be not only cogent, but bright, and

to the court that she had accurate information of the sentencing possibilities on which to base her decision to enter her pleas. See footnote 3. Further, given the court's inquiries and the defendant's responses, the record indicates that even if the court had expressly stated the maximum sentence, that would not have made a difference in the defendant's decision. We cannot conclude that her pleas were made unknowingly or involuntarily. We conclude, therefore, that the court substantially complied with Practice Book § 39-19. Consequently, the court did not abuse its discretion when it denied the defendant's motion with respect to this claim.

B

The test for substantial compliance with respect to Practice Book § 39-20 is "whether, in light of all of the circumstances, the trial court's literal compliance with [Practice Book] § 39-20 would have made any difference in the trial court's determination that the plea was voluntary." *State* v. *Ocasio*, supra, 253 Conn. 380. The defendant claims that the court failed to determine pursuant to Practice Book § 39-20 whether her pleas resulted from prior discussions between the prosecuting authority and Williams or herself. In light of all of the circumstances of the plea canvass, as detailed in

in command of her faculties, and further displaying what the court would refer to as a quiet confidence." The court further found that by the defendant's own admission "she came from a very successful family in Paraguay, she was a superior student during her schooling, she was afforded a higher education, and was a successful beauty contestant and actress in her home country." Thereafter, the court found no language barrier at the time of the plea and that the defendant was "intelligent, informed, confident in the proper sense of the word, not hesitant, socially adept with an appreciation of her surroundings, and fully cognizant of what was transpiring at the time."

The court confirmed its previous findings in its March 3, 1999 hearing on the same issues raised in this appeal. In that hearing, the court found that the record reflected substantial compliance with Practice Book § 39-19 clearly because the court had "confirmed through the defendant and her counsel that counsel had informed her of the maximum sentence."

part I A, and the court's observations concerning the defendant,[15] we cannot agree with the defendant. The court thoroughly canvassed the defendant, and she expressly stated that her pleas were made voluntarily.[16] Further, we conclude that the court correctly applied the law and reasonably found that the record is clear, if implicitly, that the court ensured that the defendant's pleas were voluntary and a result of prior plea discussions between the defendant or her counsel and the state.[17] The record contains nothing to suggest that the pleas were not the result of such prior discussions and the defendant has not claimed otherwise. See *State* v. *Ocasio*, supra, 381. We conclude that the court substantially complied with Practice Book § 39-20, and, in light of all of the circumstances of the plea, it cannot be said that the court's literal compliance with that section would have altered the court's determination that the pleas were made voluntarily. Hence, the court did not abuse its discretion in denying the defendant's motion on this ground.

## C

The defendant also claims that her pleas were made involuntarily because the court failed to comply strictly with Practice Book § 39-9 by informing her that she

---

[15] See footnote 14.

[16] The transcript states in relevant part:

"The Court: Has anybody threatened you or forced you in any way to enter your plea?

"The Defendant: No.

"The Court: Are you doing so then of your own free will?

"The Defendant: Yes, Your Honor."

[17] In its March 3, 1999 hearing on this issue, the court found that it had complied substantially with Practice Book § 39-20 and that the record clearly indicated that prior discussions had occurred when the defendant answered in the affirmative to the court's inquiry of whether she understood the terms of her plea agreement and when the defendant's counsel, rather than the state, initiated the presentation of those terms to the court. The court further found that prior discussions had taken place because all relevant parties were aware of the cap agreement at the time the court took the pleas.

could withdraw her pleas if the case was continued for sentencing and she received a different sentence than that agreed on in the plea agreement. We have held generally that a mandatory provision of the rules of practice, such as Practice Book § 39-9, must be implemented fully to avoid trampling on a defendant's constitutional rights, which would constitute plain error and require, as a consequence, reversal of the judgment. See *State* v. *Schaeffer*, supra, 5 Conn. App. 388; see also *Miller* v. *Commissioner of Correction*, 29 Conn. App. 773, 779, 617 A.2d 933 (1992). The rule in *Schaeffer* aims, however, to prevent situations in which a court, by failing to follow the mandatory provision, both deprives a defendant of rights *and subsequently imposes a harsher sentence* than that implied in a plea agreement without first allowing a defendant the opportunity to withdraw her plea.[18] See *State* v. *Schaeffer*, supra, 387. In other words, we held in *Schaeffer* that, "the trial court has an affirmative mandatory obligation, prior to the imposition of sentence, to tell the defendant that it will not accept the recommendation [of the plea agreement] and to afford the defendant an opportunity to withdraw [the] plea." Id., 389; see *Miller* v. *Commissioner of Correction*, supra, 779.[19]

---

[18] Commentators on the rules of practice have agreed with the interpretation in *Schaeffer* that the opportunity to withdraw a plea is required only where a different sentence is to be imposed in actuality. See L. Orland & D. Borden, 4 Connecticut Practice Series: Criminal Procedure (3d Ed. 1999) § 39-9, comments, p. 152.

[19] The facts of both the *Schaeffer* and *Miller* cases differ markedly from those in this case. In those cases, the defendants were subjected to harsher sentences than those suggested in their plea agreements without having first been afforded an opportunity to withdraw their pleas. Here, the court sentenced the defendant to exactly what she had agreed. Further, we note that those cases ruled ultimately on the basis of a violation of Practice Book § 698, now § 39-10, which requires that a court afford a defendant the opportunity to withdraw a plea before imposing a sentence *different* from that recommended in a plea agreement. Because the issues inherent in Practice Book §§ 39-9 and 39-10 are virtually the same, however, those cases are applicable to our analysis. Further, our research has not revealed a case that, without reference to Practice Book § 39-10 or to its predecessor, § 698,

Our Supreme Court has held that in ensuring that a defendant's plea was made knowingly and voluntarily, "[n]ot every deviation from the specific requirements of a Practice Book rule necessitates reversal." *State* v. *Suggs*, 194 Conn. 223, 226–27, 478 A.2d 1008 (1984). Further, our Supreme Court has concluded that a court's ruling on a motion adverse to a defendant was not an abuse of discretion where the violation of a rule of practice resulted in no harm such that a defendant was not deprived of her constitutional rights. *State* v. *Fernandez*, 254 Conn. 637, 647, 758 A.2d 842 (2000), cert. denied, 532 U.S. 913, 121 S. Ct. 1247, 149 L. Ed. 2d 153 (2001); see also *Neder* v. *United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (most constitutional errors can be harmless; very few require automatic reversal). Similarly, we have recognized that where the rules of practice have not been strictly followed, the question of whether a defendant's constitutional rights have been violated may be viewed in the context of the whole record. *State* v. *Evans*, 5 Conn. App. 113, 117, 497 A.2d 73 (1985); see also *State* v. *Badgett*, 200 Conn. 412, 418, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). The true gravamen of the defendant's claim here is whether, by failing to comply strictly with Practice Book § 39-9, she was deprived of a constitutional right, and thereby entered her pleas unknowingly and involuntarily. "[A]lthough the Practice Book provisions were designed to reflect the principles embodied in *Boykin* . . . precise compliance with the provisions is not constitutionally required. Thus, our analysis will focus on whether the federal constitutional principles of *Boykin* were satisfied rather than on meticulous compliance with the provisions of the Practice Book." (Citations omitted.) *State* v. *Badgett*, supra, 418. We are mindful

---

ruled solely on the basis of compliance with Practice Book § 39-9 or to its predecessor, Practice Book § 697.

as well that contract principles determine the validity of plea agreements and that under the terms of a plea agreement, a defendant receives consideration for her pleas in the form of an agreed sentence. *State* v. *Garvin*, supra, 242 Conn. 314.

In the present case, the court did not ignore its duty to clarify the terms of the plea agreement and to ensure that the defendant's pleas were made knowingly and voluntarily. See id., 309–10. Further, the court did not ignore the mandate of Practice Book § 39-9. When this case was continued for sentencing, the court warned the defendant that she could face a different sentence, up to the maximum of fifteen years of incarceration, if she failed to appear. See footnote 3. The court did not tell the defendant, however, that she could withdraw her pleas in the event of a different sentence. In its March 3, 1999 hearing on that issue, the court, after examining the relevant circumstances, found no prejudice to the defendant as a result of that failure because the defendant was not in danger of being sentenced to more than that to which she had agreed in her plea agreement. The court based that finding partially on the fact that its usual practice was to have the judge who accepted a defendant's plea to in fact be the judge who sentenced that defendant. The court found further that it never gave an indication that it would not abide by the plea agreement in this case. Finally, the court found that the only reason it ordered a presentence investigative report was because the plea agreement contemplated an alternative incarceration plan such as the one adopted. We conclude that under the circumstances, though the court failed to comply meticulously with the mandate of Practice Book § 39-9, the impropriety was harmless.

The defendant also received the benefit of her bargain as agreed and perhaps even exceeded her expectations in light of the fact that her sentence was suspended in

favor of probation. Despite the violation of the exact requirements of Practice Book § 39-9, the defendant was not harmed or deprived of her constitutional right to enter her pleas knowingly and voluntarily.[20] She was not denied, as were the defendants in the *Schaeffer* and *Miller* cases, the opportunity to withdraw her pleas in the face of a sentence different from that to which she had agreed. Therefore, the court did not abuse its discretion in denying the defendant's motion as it pertains to her claim with respect to Practice Book § 39-9.

## II

## TRIAL COURT'S DEPORTATION ADVISEMENT

The defendant further claims that the court misadvised her on the deportation consequences of her pleas under § 54-1j,[21] despite complying with the statute.[22] The

[20] We incorporate our conclusions in parts I A and B that the court's findings were reasonable in regard to the defendant's intelligence and knowledge in general, and in relation to the proceedings, as well the completely voluntary and knowing nature of her pleas.

[21] General Statutes § 54-1j provides: "Court instruction on possible immigration and naturalization ramifications of guilty or nolo contendere plea.

"(a) The court shall not accept a plea of guilty or nolo contendere from any defendant in any criminal proceeding unless the court advises him of the following: 'If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States.'

"(b) The defendant shall not be required at the time of the plea to disclose his legal status in the United States to the court.

"(c) If the court fails to advise a defendant as required in subsection (a) of this section and the defendant not later than three years after the acceptance of the plea shows that his plea and conviction may have one of the enumerated consequences, the court, on the defendant's motion, shall vacate the judgment, and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty."

[22] The defendant argues that the advice mandated by General Statutes § 54-1j was insufficient because it failed to advise her of the consequences of her pleas with exact certainty. The transcript of the plea canvass states in relevant part:

"The Court: Do you understand that if you are not a U.S. citizen, these

defendant's claim is without merit and fails because the court properly advised her as to the collateral consequence of deportation, and § 54-1j operates in a manner complementary to federal law.[23]

Section 54-1j requires the court to instruct a defendant on possible immigration and naturalization consequences that may result from a guilty plea or a plea of nolo contendere. Here, following the language of § 54-1j somewhat closely, the court instructed the defendant that her pleas *could* result in deportation if she was not a citizen of the United States. See footnote 22. Despite conceding that the court complied with the mandates of § 54-1j, the defendant argues that by following the statute, the court misstated current federal immigration law because the statute only requires the court to inform defendants that a plea *might* result in deportation, instead of informing them that a plea to an aggravated felony under the federal immigration law *will certainly* result in deportation. The rules of practice and our law, however, do not require the court to advise a defendant "of every possible consequence of . . . a plea." (Internal quotation marks omitted.) *State* v. *Andrews*, supra, 253 Conn. 504. "Although a defendant must be aware of the direct consequences of a plea, the scope of direct consequences is very narrow. . . . In Connecticut, the direct consequences of a defendant's plea include only [those enumerated in Practice Book § 39-19 (2), (3) and (4)]. The failure to inform a defendant as to all possible indirect and collateral consequences does not render

pleas could result in your deportation, exclusion from the United States or a denial of naturalization? Do you understand that?

"The Defendant: Yes, I do."

[23] We need not indulge in an analysis of federal immigration law here because General Statutes § 54-1j is a caveat in place only to call a defendant's attention to various potential immigration consequences under the federal law. With that knowledge, a given defendant can choose to proceed with the plea process or to pursue more information about the ramifications inherent in the plea before committing to those potential consequences.

a plea unintelligent or involuntary in a constitutional sense."[24] (Citations omitted; internal quotation marks omitted.) *State* v. *Andrews*, supra, 504–505.

Our Supreme Court has previously deduced that the legislative intent behind § 54-1j, "rather than demanding that trial courts instruct defendants on the intricacies of immigration law, seeks only to put defendants on notice that their resident status could be implicated by the plea."[25] *State* v. *Malcolm*, supra, 257 Conn. 663–64. The impact of a plea's immigration consequences on a defendant, while potentially great, is not of constitutional magnitude and "cannot transform this collateral consequence into a direct consequence of the plea." (Internal quotation marks omitted.) Id., 663 n.12. As a corollary, the statute's purpose is simply to recognize that "this collateral consequence is of such importance that the defendant should be informed of its possibility." (Internal quotation marks omitted.) Id. In this case, the defendant has conceded that she was informed clearly of the possibility of deportation. The onus rests then with the defendant and her counsel to determine the final result applicable to her situation under federal immigration law before entering a plea. Therefore, the court complied with § 54-1j as required and warned the defendant of the consequences of her pleas. See footnotes 21 and 22.

Further, the record before us does not raise legitimate concerns that the defendant did not fully understand the consequences of her pleas with respect to deporta-

---

[24] Although our Supreme Court has noted that, as a matter of law, Practice Book § 39-19 may not enumerate every direct consequence of a plea, it has also noted that neither it nor this court has identified any such consequences up to this time. See *State* v. *Andrews*, supra, 253 Conn. 507 n.8. Similarly, we decline to broaden that scope here, as it is unwarranted under our law.

[25] Indeed, courts are implicitly limited by General Statutes § 54-1j (b) as to how far they can advise a particular defendant with regard to their legal status.

tion. Cf. *State* v. *Collins*, 207 Conn. 590, 598–99, 542 A.2d 1131 (1988). The court found that the defendant was unconcerned with deportation, despite having been warned of it by Williams, and therefore she would have proceeded exactly as she did. "The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence . . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Mutual Communications Associates, Inc.*, 66 Conn. App. 397, 402, 784 A.2d 970 (2001). The record supports the court's findings, as detailed in part III, and, accordingly, we conclude, as we must, that the defendant had the opportunity to change her mind about entering her pleas after hearing the warning pursuant to § 54-1j, but that she chose not to do so. See footnote 23. In light of all of the evidence, the court's finding was not clearly erroneous. We conclude that the court did not misstate the law with regard to the collateral consequence of potential or even actual deportation, and, therefore, did not abuse its discretion.

## III

## INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, the defendant claims that her pleas were made unknowingly and involuntarily, and that her motion should have been granted because Williams rendered ineffective assistance of counsel during the court's plea canvass and in relation to the deportation consequences of her pleas.[26] The defendant argues spe-

---

[26] The defendant's claim is made properly. "A claim of ineffective assistance of counsel is generally made pursuant to a petition for a writ of habeas corpus rather than in a direct appeal. . . . Section 39-27 of the Practice Book, however, provides an exception to that general rule when ineffective

cifically that Williams, her attorney at the time of the plea canvass, "failed to research potential immigration consequences of a nolo contendere plea, neglected to apprise the trial court of its inaccurate instruction to [her] in the plea canvass [pursuant to § 54-1j] and made misrepresentations to [her] regarding deportation." Because the court's findings of fact regarding Williams' effective assistance of counsel were legally and logically correct, and were supported by the following facts, we do not agree.

The following additional facts are necessary to our review of the defendant's claims. On May 13, 1999, the court heard testimony on those claims from the defendant, her immigration attorney and Williams. The defendant testified that Williams was aware of her legal status and that it was her intention to go to trial until the day she entered her pleas. She stated that she spoke to Williams once about deportation and that he advised her that she would, at worst, serve probation in the United States. The defendant also testified that the week before she entered her pleas, Williams told her he was not an immigration attorney, but that she need not consult one and that there were ways around being deported. The defendant said that advice was satisfactory because she trusted Williams and that she never called her immigration attorney about deportation because she was too embarrassed by her criminal charges.

According to the defendant, Williams first informed her of the plea agreement on the morning that she entered her pleas via telephone while she was on her way to court for a routine appearance. The defendant stated that she did not understand the agreement, but that Williams assured her she would likely serve proba-

assistance of counsel results in a . . . plea." (Citation omitted.) *State* v. *Gray*, supra, 63 Conn. App. 161.

tion in the United States if she accepted it. Nevertheless, the defendant said that deportation was not mentioned and that she agreed to enter the pleas. Additionally, she testified that Williams briefed her on the formalities of the plea process and what her pleas meant, but that he instructed her to "just say yes, yes, yes." The defendant then testified that she understood the possible immigration consequences at the time of the pleas and that she still understood them, but that she did not consult an immigration attorney regarding those consequences until after entering her pleas. Further, the defendant stated that she was convinced she could not ask for more time to consider her pleas, she was terrified during the plea process, and she was not told that she could inquire of the court if she did not understand something. Finally, she testified that she would not have entered her pleas had she known deportation was a consequence.

Williams testified that when he first met the defendant, she understood English very well and they discussed her legal status. He stated that he informed her then that because she had "no status in this country or she was illegal," she would be deported if she pleaded or was found guilty of the charges against her. Williams testified that the defendant simply wanted to get out of jail and that deportation did not concern her because she was planning on leaving the United States. Williams also stated that although deportation was mentioned in subsequent meetings, the defendant remained unconcerned and focused on the issue of incarceration. In support of that assertion, Williams testified that the defendant refused an August, 1997 plea bargain because he "could not guarantee her that she would not go to jail, and she really wanted not to have a conviction." Nevertheless, according to Williams' testimony, the defendant changed her mind and met with him about one week before she entered her pleas to discuss the

details involved, including the immigration consequences and the chances of being sentenced to probation or incarceration. Williams also stated that the telephone call on the morning that the pleas were entered merely concerned whether he was able to get a better plea agreement for the defendant than the one discussed.

Williams confirmed that he made it clear to the defendant that he was not an immigration lawyer and that, prior to the completion of the plea process, the defendant never told him she wanted to avoid deportation as a result of her pleas. Moreover, Williams admitted that he had never before represented a criminal defendant where deportation was an issue and that, instead of researching federal law directly, his advice to the defendant on deportation was based on his conversation with the defendant's immigration attorney, as we will discuss. He specifically denied, however, that he advised the defendant on how to avoid deportation laws or ever advised her not to consult an immigration attorney. Williams also testified that he contacted the defendant's immigration attorney several times to discuss her legal status, including the effects of a conviction, and that he had relayed the substance of those conversations to the defendant. The immigration attorney's testimony confirmed that Williams had contacted him several times with regard to the defendant to discuss "the impact of any kind of plea bargain or resolution to the case." The immigration attorney also stated that although he did not advise the defendant personally concerning her criminal case, he told Williams that the defendant was deportable as an "overstay" on her tourist visa and that a conviction would serve to augment the probability of her deportation.

The widely known standard for evaluating ineffective assistance of counsel claims, set forth in *Strickland* v. *Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.

Ed. 2d 674 (1984),[27] has been more finely tuned in regard to the withdrawal of involuntary pleas under Practice Book § 39-27.[28] "A defendant must satisfy two requirements . . . to prevail on a claim that [a] plea resulted from ineffective assistance of counsel. . . . First, [the defendant] must prove that the assistance was not within the range of competence displayed by lawyers with ordinary training and skill in criminal law . . . . Second, there must exist such an interrelationship between the ineffective assistance of counsel and the . . . plea that it can be said that the plea was not voluntary and intelligent because of the ineffective assistance." (Internal quotation marks omitted.) *State* v. *Gray*, supra, 63 Conn. App. 161–62. Further, the question of "[w]hether the representation a defendant received . . . was constitutionally inadequate is a

---

[27] In *Strickland*, the United States Supreme Court promulgated a two-pronged test for claims of ineffective assistance of counsel: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland* v. *Washington*, supra, 466 U.S. 687.

[28] A short examination of the further development of the *Strickland* test is in order. In a case involving a habeas petition, the United States Supreme Court ruled that the *Strickland* test also applied to guilty pleas challenged on the basis of ineffective assistance of counsel. *Hill* v. *Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985); see *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 156, 662 A.2d 718 (1995). Merely reaffirming the first prong of the *Strickland* test, the court went on to recast the second, or prejudice, prong in relation to guilty pleas by determining that to satisfy that prong "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill* v. *Lockhart*, supra, 59; *Copas* v. *Commissioner of Correction*, supra, 156. More recently, this court focused specifically on a direct appeal of the denial of a motion to withdraw a plea for involuntariness made pursuant Practice Book § 39-27. See *State* v. *Gray*, supra, 63 Conn. App. 161. The prejudice prong of the test used in *Gray*, which we employ here, followed precedent from our Supreme Court consistent with the *Strickland* test. See id., 161–62; see also *State* v. *Lopez*, 197 Conn. 337, 342, 497 A.2d 390 (1985). That version of the prejudice or "interrelationship" prong focuses on the interrelationship between ineffective assistance of counsel and whether a plea was made voluntarily and intelligently. See *State* v. *Gray*, supra, 161–62; see also *State* v. *Lopez*, supra, 342.

mixed question of law and fact [that] requires plenary review by this court unfettered by the clearly erroneous standard." (Internal quotation marks omitted.) *Daniel* v. *Commissioner of Correction*, 57 Conn. App. 651, 663, 751 A.2d 398, cert. denied, 254 Conn. 918, 759 A.2d 1024 (2000). "[W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *Bartomeli* v. *Bartomeli*, 65 Conn. App. 408, 412, 783 A.2d 1050 (2001). Additionally, in reviewing this claim, "we must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." (Internal quotation marks omitted.) *Daniel* v. *Commissioner of Correction*, supra, 674. In accordance with this principle, we recognize also that the right to effective assistance is not "the right to perfect representation." (Internal quotation marks omitted.) *Baez* v. *Commissioner of Correction*, 34 Conn. App. 236, 243, 641 A.2d 147, cert. denied, 231 Conn. 905, 906, 648 A.2d 149 (1994). We are mindful as well that "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information." *Strickland* v. *Washington*, supra, 466 U.S. 691.

Our review of the record reveals that the court's findings of fact were legally and logically correct, and that they were supported by the facts. The only evidence produced by the defendant in this case to refute the testimony of her immigration lawyer and Williams was her own testimony, which the court found to be untrustworthy, not credible and "selective editorial recollec-

tion." After crediting the testimony of the two attorneys, the court found that Williams called the defendant's immigration attorney on several occasions to discuss the immigration consequences of her pleas under applicable immigration law and that Williams had relayed those discussions to the defendant. The court further found that the defendant had told Williams that she was not concerned about the consequence of deportation because she already intended to return to Paraguay. The court's findings are substantiated by evidence in the record, and we will not disturb them here.

We conclude, therefore, that on such facts it was legally and logically correct for the court to conclude that Williams engaged in adequate representation, especially in light of the defendant's disregard for the consequence of deportation. The defendant has failed to establish that Williams' assistance fell beneath the range of competence required of attorneys. Because the defendant has failed to satisfy the first prong of the test for ineffective assistance of counsel, we need not address whether she has established that her pleas were made involuntarily under the interrelationship prong. Further, on the basis of our decision in part II, we conclude that the defendant's claim that Williams failed to inform the court of a faulty instruction pursuant to § 54-1j is without merit. Accordingly, the court did not abuse its discretion in denying the defendant's motion in relation to her claims of ineffective assistance of counsel.

The judgment is affirmed.

In this opinion FREEDMAN, J., concurred.

LANDAU, J., concurring. I agree with the majority's result, but I write separately to disagree respectfully with some portions of the majority's analysis of the issues presented. I am motivated to concur, in part, by my strong belief that we need write only what is

necessary to resolve the claims presented by the parties; to do otherwise often provides the gateway to a higher appeal or an inconsistent body of case law. It seems to me that one must separate that which is important from that which is merely interesting. "More than [60] years ago, in his *Treatise on Evidence,* Dean John H. Wigmore made this point very clear as he reacted to the many thousands of judicial opinions he had studied in the course of preparing his treatise. Some of the criticisms he set down then, unfortunately are still appropriate today: 'Overconsideration of every point of law raised on the briefs . . . shows faithfulness and industry, for which we should be and are grateful. But it tends to remove the decision from the really vital issues in each case and to transform the opinion into a list of rulings on academic legal assertions. The opinion is as related to the meat of the case as a library catalogue is to the contents of the books. This is far from exercising the true and high function of an appellate court.' " R. Aldisert, Opinion Writing (1990) pp. 86–87, quoting 1 J. Wigmore, Evidence on Trials at Common Law (1983) § 8a, p. 617.

I am also mindful of the long-standing prohibition against advisory opinions. See *Reply of the Judges,* 33 Conn. 586 (1867). Furthermore, it almost goes without saying, that just as we expect litigants to be precise, the court too must write its opinions succinctly and clearly.

In this case, the defendant claims that the trial court abused its discretion by denying her motion to withdraw the pleas of nolo contendere. In that motion, dated January 26, 1999, the defendant claims that her pleas were made involuntarily and unknowingly because the trial court's plea canvass of her was defective, and she received ineffective assistance of counsel. The defendant was subsequently permitted to amend her motion to include a claim that the court accepting her plea failed to comply with the requirements of General Stat-

utes § 54-1j. The court denied the defendant's motion on all grounds.

## I

I turn first to the provisions of our rules of practice governing the withdrawal of a nolo contendere plea. There are several Practice Book sections that concern the withdrawal of a plea. One section deals with the procedural aspects of withdrawing a plea; Practice Book § 39-26; and another deals with the substantive grounds that may form the basis for granting a motion to withdraw a plea. Practice Book § 39-27.[1]

After accepting a plea of nolo contendere, "the judicial authority shall allow the defendant to withdraw . . . her plea upon proof of one of the grounds in Section 39-27. . . ." Practice Book § 39-26. The defendant here filed her motion to withdraw pursuant to Practice Book § 39-27, asserting that she should be permitted to withdraw her nolo contendere pleas on the grounds that "[t]he plea was accepted without substantial compliance with Section 39-19" and that "[t]he plea resulted from the denial of effective assistance of counsel." Practice Book § 39-27 (1) and (4), respectively. The defendant also claimed that her motion to withdraw was grounded in § 39-27 (2) ("[t]he plea was involuntary") because the court did not comply with General Statutes § 54-1j, a statutory basis.

## II

I next turn to the majority's discussion of the standard of review to be applied to the trial court's ruling on a motion to withdraw a nolo contendere plea. At footnote 7, the majority states that "[g]uilty pleas and pleas of nolo contendere are treated by this court, for purposes of review, in much the same manner." I am constrained to differ. My disagreement goes to the breadth of the

[1] Practice Book § 39-28 concerns the effect of withdrawing a plea.

statement. This court does not review all appeals related to guilty pleas and pleas of nolo contendere in the same manner. The standard of review and the applicable law depend upon the reason for the review. In this instance, we are reviewing the court's denial of a defendant's motion to withdraw her nolo contendere pleas. A defendant who enters nolo contendere pleas may move to withdraw her pleas on the basis of one of the grounds set forth in Practice Book § 39-27. See *State* v. *Casado*, 42 Conn. App. 371, 375, 680 A.2d 981, cert. denied, 239 Conn. 920, 682 A.2d 1006 (1996). I agree that we review a denial of a motion to withdraw a nolo contendere plea by an abuse of discretion standard; see *State* v. *Gundel*, 56 Conn. App. 805, 812, 746 A.2d 204, cert. denied, 253 Conn. 906, 753 A.2d 941 (2000); and that is also the standard by which we review motions to withdraw guilty pleas founded on Practice Book § 39-27; see *State* v. *Andrews*, 253 Conn. 497, 505–506, 752 A.2d 49 (2000). It is the same manner of review therefore and not "in much the same manner," as phrased by the majority.

What is most perplexing to me with respect to footnote 7 is why it is part of the opinion, as it is not necessary to our resolution of the issue. In this opinion, we are concerned only with a nolo contendere plea, not a guilty plea. This appeal presents us with nothing out of the ordinary to require that we provide jurisprudential comments or a history of the development of the law.

Furthermore, the statement is inaccurate to the extent that this court does not review all nolo contendere pleas and guilty pleas filed pursuant to Practice Book §§ 39-26 and 39-27 by an abuse of discretion standard. For example, where the appellant has not preserved the issue at the hearing or trial, *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), applies. See *State* v. *Silva*, 65 Conn. App. 234, 239–40, 783 A.2d

7, cert. denied, 258 Conn. 929, 783 A.2d 1031 (2001). Different standards of review and law apply to our reviews of guilty pleas and nolo contendere pleas that do not arise out of motions to withdraw. For example, motions for review of nolo contendere pleas filed pursuant to Practice Book § 61-6 (a) (2) (i)[2] are reviewed by clearly erroneous and plenary standards. See *State* v. *Duncan*, 67 Conn. App. 29, 34, 786 A.2d 537 (2001). In habeas corpus appeals concerning ineffective assistance of counsel claims, we apply the standard enunciated in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

For these reasons, I take issue with footnote 7.

### III

When addressing the defendant's claim that the trial court failed to comply substantially with the requirements of Practice Book § 39-19, the majority analyzes the trial court's conclusion that the defendant understood the maximum sentence that could be imposed on her as a result of her nolo contendere pleas. The majority correctly notes that the trial court is permitted to rely upon the defendant's responses given during the plea canvass. *State* v. *Johnson*, 253 Conn. 1, 40, 751 A.2d 298 (2000). The majority observes that the court here concluded that the defendant's responses were especially reliable and, in footnote 14, cites the trial court's findings of fact and legal conclusion. While I would affirm the trial court's finding that the defendant understood the proceedings at her plea canvass, which is supported by appropriate adjudicative factual findings, I believe that some of the court's findings are irrelevant as to whether a Latin American is able to

[2] Practice Book § 61-6, in concert with General Statutes § 54-94a, permits a defendant to enter a plea of nolo contendere to reserve the right to appeal from the trial court's denial of a motion to suppress evidence.

understand the legal proceedings in a Connecticut courtroom, where English is the spoken language.

"Adjudicative facts are those selected from the gross facts found by the fact-finder from the congeries of record evidence. Such facts are deemed necessary, relevant and material to the particular issues(s) presented for decision. There is an important reason why the facts set forth in an opinion should be selected with care. This reason goes to the heart of *stare decisis*: Like cases should be treated alike. And because our tradition is fact-specific, it is critical that the concept of 'like cases' should refer to cases that contain like material or relevant facts.

"The decision that emanates from the opinion, the case law, is used to inform, guide and govern future private and public transactions. This future use of the decision is a necessary product if we accept Holmes's definition, as I think we should, that law is nothing more pretentious than a prediction of what the courts will do in fact. To put it another way, a quality opinion will predict how similar factual scenarios will be treated." (Emphasis added.) R. Aldisert, supra, pp. 10–11.[3]

In affirming the trial court's decision, the majority compounds the scope of the irrelevant findings by incorporating them in a footnote to support its conclusion that the judgment should be affirmed. The only relevant facts found by the trial court necessary to its finding that the defendant understood the proceedings and the maximum sentence that could result from her plea were that she was in command of her faculties, intelligent, informed, confident, not hesitant, socially adept, appreciative of her surroundings and fully cognizant of what was transpiring at the time. In addition, the court also found that language did not present a barrier to her

---

[3] See O. Holmes, "The Path of the Law," 10 Harv. L. Rev. 457, 460–61 (1890).

ability to understand the proceedings. The status of her family and her success and profession in Paraguay are not relevant or material to the issue of whether she understood the maximum sentence she could receive. I would not include those findings in this court's opinion.

## IV

When reviewing a trial court's findings of fact, we apply the clearly erroneous standard to the court's findings. *Prial* v. *Prial*, 67 Conn. App. 7, 10, 787 A.2d 50 (2001). This court "may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record . . . ." Practice Book § 60-5. In addressing the defendant's claim that she should be permitted to withdraw her nolo contendere pleas due to ineffective assistance of counsel, the majority concludes that the court's findings are not clearly erroneous. I agree.

In analyzing the claim, however, the majority does not limit itself to the facts found by the trial court. The majority summarizes the testimony of witnesses. Our Supreme Court has disapproved of this practice. "[T]he statement of what a witness testified to is not, in that form, even a statement of an evidential fact. . . . The arbitration award simply recounted the plaintiff's testimony, as evidenced by its use of such phrases as 'the Claimant's testimony was.' Such recitations of testimony are not findings." (Citation omitted, internal quotation marks omitted.) *Almeida* v. *Liberty Mutual Ins. Co.*, 234 Conn. 817, 825, 663 A.2d 382 (1995). An opinion should include only the trial court's findings of fact.

For these reasons, I respectfully concur in the majority's opinion.