******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* DANIEL
DZWONKOWSKI
(AC 35702)

Gruendel, Beach and Harper, Js.

*Argued March 6—officially released June 17, 2014*

(Appeal from Superior Court, judicial district of
Fairfield, geographical area number two, Rodriguez, J.)

*Michael Zariphes*, assigned counsel, for the appel-
lant (defendant).

*Jonathan M. Sousa*, special deputy assistant state's
attorney, with whom, on the brief, were *John C. Smriga*,
state's attorney, and *Tatiana A. Messina*, assistant
state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Daniel Dzwonkowski, appeals from the judgment of conviction, rendered by the trial court following his guilty plea, pursuant to a *Garvin* agreement,[1] of possession of a controlled substance with intent to sell in violation of General Statutes § 21a-277 (b). The defendant claims that (1) his plea violated his due process rights because it was not entered knowingly, voluntarily and intelligently, and (2) his due process rights were violated when the court imposed the maximum sentence allowed under the agreement because (a) he did not have fair notice of the terms of the agreement, and (b) the evidence offered by the state to support a violation of the agreement was not admitted properly at the sentencing hearing. We affirm the judgment of the trial court.

The record reveals the following facts and procedural history. On April 13, 2012, Bridgeport police officers executed a search warrant for the defendant's residence in Stratford. The return and inventory form listing the items seized during the search stated that the police recovered $166 in cash, plastic baggies, a digital scale, a metal box containing drug paraphernalia, a cell phone and 2.27 ounces of marijuana. The defendant was arrested and charged with, inter alia, possession of a controlled substance with intent to sell in violation of § 21a-277 (b).[2]

During the plea hearing on August 13, 2012, the defendant pleaded guilty to possession of a controlled substance with intent to sell in violation of § 21a-277 (b) pursuant to a *Garvin* agreement, which, in exchange for his guilty plea, provided that if he was fully compliant with a program at Bridgeport's Alternative to Incarceration Center (program), he would receive a fully suspended sentence. If, on the other hand, he was not compliant, he would be subject to a maximum sentence of three years incarceration, suspended after one year, and three years probation. The court further stated that the defendant was to complete the substance abuse portion of the program, to obey all the rules and regulations of the program, and to submit negative urines when randomly required to do so. After the court thoroughly canvassed the defendant, the court accepted the plea and found that he knowingly, freely, voluntarily and intelligently pleaded guilty.

At an October 15, 2012 hearing, a representative of the program informed the court that the defendant was noncompliant with the program due to absences. The court informed the defendant that he must attend the program, but no further action was taken at that time. At the sentencing hearing on March 15, 2013, the state offered two reports indicating that the defendant had missed five appointments with the program. The court determined that the defendant had violated the terms

of the agreement and sentenced him to three years incarceration, execution suspended after one year, and three years probation. This appeal followed. Additional facts will be set forth as necessary.

## I

The defendant first claims that his plea violated his due process rights because, as a result of a defective plea canvass, it was not entered knowingly, voluntarily or intelligently. We disagree.

The defendant acknowledges that this claim was not preserved and seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[3] We review the defendant's claim under *Golding* because the record is adequate for review, and the defendant has alleged a claim of constitutional magnitude. See *State* v. *Fagan*, 280 Conn. 69, 90, 905 A.2d 1101 (2006) (inadequate plea canvass implicates due process rights), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007). The defendant's claim fails under the third prong of *Golding* because the court properly determined that his plea pursuant to the *Garvin* agreement was entered knowingly, voluntarily and intelligently.

"In order for a guilty plea to comport with due process, the plea must be voluntary and knowingly entered. *Boykin* v. *Alabama*, 395 U.S. 238, 243–44, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). [W]e conduct a plenary review of the circumstances surrounding the plea to determine if it was knowing and voluntary. . . . There are three constitutional rights of which a defendant must be cognizant prior to entering a guilty plea. They are (1) the privilege against self-incrimination, (2) the right to a trial by jury and (3) the right to confront accusers. [Id.] Although the purpose of Practice Book § 39-19 is to ensure that guilty pleas comport with due process, a guilty plea may satisfy constitutional requirements even in the absence of literal compliance with [its] prophylactic safeguards . . . . In other words, substantial compliance is sufficient." (Citation omitted; internal quotation marks omitted.) *State* v. *Lage*, 141 Conn. App. 510, 523–24, 61 A.3d 581 (2013).

## A

The defendant claims that the plea canvass violated his due process rights because it failed to comply with Practice Book § 39-19 (1).[4] Section 39-19 provides in relevant part: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands: (1) The nature of the charge to which the plea is offered . . . ." The defendant maintains that during the plea canvass, the court inquired only whether he understood the elements of the crime to which he was pleading guilty. That inquiry, he contends, was insufficient because the rules of practice require the court to apprise him of the elements of the charge or at the very least

to inquire whether trial counsel did so. We are not persuaded that the inquiry was inadequate.

"[I]t is well established that a plea of guilty cannot be voluntary in the sense that it constitutes an intelligent admission that the accused committed the offense unless the accused has received real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process. . . . In determining whether the defendant had real notice of the charge against him, however, [a] court must consider the totality of the circumstances surrounding the entry of a plea. . . . Moreover, [o]ur courts have stopped short of adopting a per se rule that notice of the true nature of the charge always requires the court to give a description of every element of the offense charged. . . . Rather, we have held that . . . even without an express statement by the court of the elements of the crimes charged, it is appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit. . . . [I]t is normally presumed that the defendant is informed by his attorney of the charges against him and the elements of those charges . . . . Thus, unless a record contains some positive suggestion that the defendant's attorney had not informed the defendant of the elements of the crimes to which he was pleading guilty, the normal presumption applies." (Citations omitted; internal quotation marks omitted.) *State v. Reid*, 277 Conn. 764, 782–84, 894 A.2d 963 (2006).

The short form information charged the defendant with, inter alia, possession of a controlled substance with intent to sell in violation of § 21a-277 (b). When the court asked the defendant how he pleaded to the charge of possession of marijuana with intent to sell or dispense in violation of § 21a-277 (b), he answered, "[g]uilty." During the plea canvass, the court asked the defendant: "And I'm not sure if I asked you, but you do understand the elements of the offense and the penalties which apply?" The defendant answered affirmatively. The court then inquired twice if the defendant had any questions, and both times the defendant stated that he did not. The record is devoid of any indication that the defendant was not informed of the nature of the charge against him and, thus, the court properly could rely on the presumption that he was informed by his attorney of the charge against him and of the elements of the charge.

B

The defendant next argues that the plea canvass did not comport with due process because, in violation of Practice Book § 39-19 (4), the court failed to inform him that the maximum possible sentence under § 21a-277 (b) was seven years incarceration and/or a fine of $25,000. The defendant argues that the court's inquiry

was limited to whether he understood the penalties that applied, and that that inquiry was insufficient. He argues that the court was required to explain to him the maximum sentence that could be imposed, or, at the very least, to inquire whether counsel had done so. He further argues that if he had known the maximum penalty for violating § 21a-277 (b), it is reasonable to conclude that he would not have accepted the state's offer. We are not persuaded.

Practice Book § 39-19 provides in relevant part that "[t]he judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands . . . (4) The maximum possible sentence on the charge . . . ." In deciding a claim made pursuant to § 39-19, "we must consider whether accurate information would have made any difference in [a defendant's] decision to enter [a] plea." (Internal quotation marks omitted.) *State* v. *Irala*, 68 Conn. App. 499, 511, 792 A.2d 109, cert. denied, 260 Conn. 923, 797 A.2d 519, cert. denied, 537 U.S. 887, 123 S. Ct. 132, 154 L. Ed. 2d 148 (2002).

The court asked the defendant if he understood the "elements of the offense and the penalties which apply," and the defendant answered, "[y]es." The court explained to the defendant the parameters of the *Garvin* agreement and asked if he understood that he was pleading guilty in exchange for receiving a sentence not greater than three years, suspended after one year of incarceration, and three years probation, but that, depending on his compliance with the agreement, he could receive a sentence of three years suspended and no incarceration, with three years probation. The defendant indicated that he understood. The defendant's answers indicated that he was aware both of the penalties that applied to the offense to which he was pleading guilty and of the actual sentencing possibilities in this case. See *State* v. *Domian*, 235 Conn. 679, 689, 668 A.2d 1333 (1996) ("the constitutional mandate is not strict adherence to the rule but, rather, an understanding by the defendant of the actual sentencing possibilities" [internal quotation marks omitted]).

Further, in light of the court's inquiries and the defendant's responses, the record indicates that express mention of the maximum sentence under the statute would not have made a difference in the defendant's decision. See *State* v. *Irala*, supra, 68 Conn. App. 513. Because the agreement provided that the defendant would receive a suspended sentence and three years probation if he complied with the requirements of the program, there is no reason to believe that he would not have pleaded guilty if the court had expressly stated the maximum sentence of seven years imprisonment pursuant to § 21a-277 (b). See *State* v. *Domian*, supra, 235 Conn. 690. We can fairly assume that the defendant chose to plead guilty because, under the *Garvin* agreement, if

he complied with the program he would serve no jail time, but only a period of probation.

### C

The defendant next argues that his guilty plea was invalid because the plea canvass violated the requirements of Practice Book § 39-19 (5),[5] and the due process clauses of the federal and state constitutions[6] in that the court failed to inform him that by pleading guilty he was waiving his privilege against self-incrimination. We do not agree.

"*Boykin* set forth three federal constitutional rights of which the defendant must be cognizant prior to entering a plea. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. . . . Second, is the right to trial by jury. . . . Third, is the right to confront one's accusers. . . . [A] reviewing court cannot presume from a silent record that a defendant knowingly waived these three important federal rights. . . . It is evident that the United States Supreme Court [in *Boykin*] views the entry of a guilty plea as comparable to the admission into evidence of a confession. That court has observed that because a confession is incriminating, its admissibility depends upon the defendant having been told that he has a right against self-incrimination in order to ensure a reliable determination on the voluntariness issue. . . . Because a guilty . . . plea has much the same impact as a confession, that court has mandated that the defendant be informed that he need not enter the plea. The tenor of the *Boykin* opinion does not support [a] contention that the federal constitution requires that [a defendant] be informed, at his plea canvass, that his right against self-incrimination also protects him from being compelled to testify at a trial. We conclude that, for protection of his privilege against self-incrimination, the federal constitution mandates only that a defendant be apprised of the fact that he does not have to enter a plea of guilty . . . and thus incriminate himself." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *State* v. *Nelson*, 221 Conn. 635, 639–42, 605 A.2d 1381 (1992); see also *State* v. *Carter*, 243 Conn. 392, 400–401, 703 A.2d 763 (1997) (court effectively notified defendant during plea canvass of right against self-incrimination by virtue of defendant's recognition that he knew he was voluntarily giving up right to trial).

During the plea canvass, the court inquired whether the defendant was being forced or threatened to admit that he possessed marijuana with intent to sell. The defendant answered: "No." The court also asked the defendant if he understood that by pleading guilty he was giving up his rights to plead not guilty, to a trial before a judge or jury, to confront and cross-examine witnesses at trial, and to present a defense. The defendant answered that question affirmatively. Viewing the

plea canvass as a whole, we conclude that in accordance with *Nelson*, the plea canvass comported with federal due process because the defendant was adequately apprised that he did not have to enter a plea of guilty. See *State* v. *Nelson*, supra, 221 Conn. 642.

We conclude that the plea canvass indicates that the defendant knowingly and voluntarily pleaded guilty. Accordingly, the defendant's claim fails under the third prong of *Golding*.

II

The defendant next claims that the court violated his right to due process when it erroneously found that he had violated the terms of the *Garvin* agreement and imposed the maximum sentence under the agreement. He argues that (1) he did not have fair notice that failure to attend appointments at the program was a violation of the agreement and (2) that there was no evidence to support the court's finding that he had violated the agreement. The defendant requests *Golding* review of his claims. We conclude that the record is adequate for review and that his claims, which implicate due process, are of constitutional magnitude. We conclude, however, that his claims fail under the third prong of *Golding* because he had fair notice of the terms of the agreement and the court properly relied on evidence that he had missed appointments at the program in concluding that he had violated the agreement.

A

The defendant argues that the *Garvin* agreement was not clear, and, thus, he did not have fair notice that failing to attend appointments at the program would constitute violations of the agreement and thus result in the imposition of the sentence actually imposed. We disagree.

"[B]ecause a defendant pleading guilty pursuant to a plea agreement waives a number of fundamental constitutional rights . . . the circumstances surrounding the plea agreement must comport with due process to ensure [the] defendant's understanding of its consequences. . . . The notion of fundamental fairness embodied in due process implies that whatever promises the government makes in the course of a plea agreement to induce a guilty plea must be fulfilled. . . . Our Supreme Court has held that a plea agreement is akin to a contract and that the well established principles of contract law can provide guidance in the interpretation of a plea agreement. . . . Whether a contractual provision is ambiguous presents a question of law and therefore is subject to de novo review. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." (Citations omitted; internal quotation marks omitted.) *State* v. *Rosado*, 92 Conn. App. 823, 826–27, 887 A.2d 917 (2006).

The terms of the plea agreement were stated by the court. At the August 13, 2012 plea hearing, the court informed the defendant: "You entered into a plea agreement where you have agreed to receive a sentence not greater than three years, suspended after you serve one year, and three years of probation. . . . Of course, depending on your own performance you could receive a sentence of three years suspended and no incarceration and three years probation. . . . And a lot of what you receive will depend on how well you do at the Alternative to Incarceration Center program. For example, the treatment that you're receiving, you're to be involved in that treatment. You're to complete the substance abuse portion of that program, obey all the rules and regulations of [the program] and submit negative urines when you are randomly required to do so. . . . [I]f you are not in compliance, the judge that's taking your case, whether it's myself or another judge, could impose a sentence of three years, suspended after one year, and three years of probation."

Although the court did not explicitly state at the plea hearing that a rule of the program was to attend meetings, the court did inform the defendant that he had to obey the rules and regulations of the program. At an October 15, 2012 hearing, five months prior to the sentencing, a representative of the program informed the court, in the presence of the defendant, that attending meetings was a requirement of the program. He stated to the court that "[the defendant] was noncompliant. So, he just stopped coming after he finished with group. So, just . . . let him know that he should continue [with the program]." The court then clearly informed the defendant that attendance at the program was required:

"The Court: You got to go to [the program]. You know what?

"The Defendant: So, go.

"The Court: You're lucky he's [the sentencing judge] not doing it today because he'd—

"The Defendant: Okay.

"The Court:—probably put you in jail for a year.

"The Defendant: Yeah, but I—

"The Court: Go to [the program].

"The Defendant: Okay.

"The Court: Just make sure you go.

"The Defendant: All right.

"The Court: Don't give me any excuses.

"The Defendant: All right."[7]

At a January 18, 2013 hearing,[8] the court informed the defendant that he must "continue to work with the

Alternative to Incarceration Center program and that you be compliant with that program, which not only means having clean urines, but [being] in compliance with all of the other conditions that they may impose upon you . . . ." When asked by the court if he understood, defendant responded: "Yes, sir."

In sum, the court stated at the August 13, 2012 plea hearing that the defendant had to complete the substance abuse portion of the program, and "obey *all the rules and regulations* of the program . . . ." (Emphasis added.) The court further stated that noncompliance could result in a sentence of three years incarceration, suspended after one year, and three years probation. A representative from the program represented on the record, at the October 15, 2012 hearing, that the rules of the program require attendance and that the defendant was noncompliant because he had stopped attending the program. On that date, the court made clear that the defendant was to go to the program and that his past behavior of noncompliance, as described by the program representative, could result in an imposition of the maximum sentence allowed under the agreement. Accordingly, when viewed as a whole, the defendant was put on fair notice that his failure to attend the program could result in the sentence that was ultimately imposed.

B

The defendant argues that there was insufficient evidence to support the court's finding that he had violated the terms of the agreement.[9] He argues that two reports from the program that the court had used in making its sentencing determination were not admitted into evidence properly and, therefore, the court erred in determining that he had violated the terms of the agreement. We disagree.

At the sentencing hearing on March 15, 2013, the prosecutor stated: "Back in January, on the 18th, when we were all here, the state had, and I know Your Honor has the transcript, had read off a number of different reports where [the defendant] was failing to report. He was missing appointments. Although he was testing positive in the beginning and then afterward negative for any illicit substances, he wasn't reporting to his case manager. He had a number of excuses. I believe that he had a baby. Most recently, it was a car accident. . . . I am in possession of [two] reports [from the program]. The one dated for the 22nd of February as well as the one dated for today, which, although there are some positive things in the report as far as not testing positive for any illicit substances, the defendant still remained noncompliant as far as his . . . numerous missed appointments. . . . The most recent report dated for today indicates that there are four missed appointments; on February 6, February 19, February 27, March 6 and March 11."

After considering the defendant's reasons for missing appointments, such as his being in a car accident on February 10, 2013, his lack of a car, his health problems and his trying to raise his three month old daughter, the court imposed a sentence of three years incarceration, suspended after one year, and three years probation. The court explained: "You have a history of not showing up."

"Under a *Garvin* agreement, a court may impose sentences predicated on the defendant's failure to fulfill a condition of the agreement . . . . The burden of proof for determining whether a *Garvin* agreement has been violated is minimum indicia of reliability." (Citations omitted; internal quotation marks omitted.) *State* v. *Brown*, 145 Conn. App. 174, 188, 75 A.3d 713, cert. denied, 310 Conn. 936, 79 A.3d 890 (2013). "To arrive at a just sentence, a sentencing judge may consider information that would be inadmissible for the purpose of determining guilt . . . . Generally, due process does not require that information considered by the trial judge prior to sentencing meet the same high procedural standard as evidence introduced at trial. Rather, judges may consider a wide variety of information. . . . Consistent with due process the trial court may consider responsible unsworn or out-of-court information relative to the circumstances of the crime and to the convicted person's life and circumstance. . . . It is a fundamental sentencing principle that a sentencing judge may appropriately conduct an inquiry broad in scope, and largely unlimited either as to the kind of information he may consider or the source from which it may come. . . . Nevertheless, [t]he trial court's discretion . . . is not completely unfettered. As a matter of due process, information may be considered as a basis for a sentence only if it has some minimal indicium of reliability. . . . As long as the sentencing judge has a reasonable, persuasive basis for relying on the information which he uses to fashion his ultimate sentence, an appellate court should not interfere with his discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Eric M.*, 271 Conn. 641, 649–50, 858 A.2d 767 (2004).

The report from the program regarding the defendant's absences had the minimum indicia of reliability required for use in sentencing. The defendant did not dispute that he had missed appointments. The defendant's counsel indicated that the defendant had missed some appointments, but that he had made efforts to go to the program as soon as possible after his missed appointments. The defendant addressed the court and did not dispute that he had absences from the program, but rather gave reasons for his absences, which the court did not credit. The court did not abuse its discretion in determining that there was a minimum indicia of reliability that the defendant had violated the terms

of the *Garvin* agreement.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] "A *Garvin* agreement is a conditional plea agreement that has two possible binding outcomes, one that results from the defendant's compliance with the conditions of the plea agreement and one that is triggered by his violation of a condition of the agreement. See *State* v. *Garvin*, [242 Conn. 296, 300–302, 699 A.2d 921 (1997)]." (Internal quotation marks omitted.) *State* v. *Petaway*, 107 Conn. App. 730, 732 n.2, 946 A.2d 906, cert. denied, 289 Conn. 926, 958 A.2d 162 (2008).

[2] The defendant was also charged with possession of a controlled substance in violation of General Statutes § 21a-279 (c) and use of drug paraphernalia in violation of General Statutes § 21a-267 (a). The state nolled these remaining charges upon the court's acceptance of the defendant's plea.

[3] In *Golding*, our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis omitted; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[4] The defendant also argues that the plea failed to comply with Practice Book § 39-27 (1) and (2), which concern standards regarding the withdrawal of previously accepted pleas. The merits of his claim are sufficiently addressed by consideration of Practice Book § 39-19, which concerns the acceptance of pleas. Pursuant to Practice Book § 39-27, a defendant may seek to withdraw a plea if there has not been substantial compliance with Practice Book § 39-19.

[5] Practice Book § 39-19 provides in relevant part: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands . . . (5) The fact that he or she has the right to plead not guilty . . . ."

[6] The defendant does not claim that the state constitution affords him any greater protection than the federal constitution. See *State* v. *Robinson*, 227 Conn. 711, 721–22, 631 A.2d 288 (1993) ("We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the defendant has provided an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the defendant's claim . . . ." [Citations omitted.]).

[7] At the plea hearing, the court clearly informed the defendant that under the agreement he was required to obey the rules of the program. Even if the defendant were to argue that at the time of the plea hearing he was unaware that a rule of the program was to attend meetings, at the October 15, 2012 hearing it was made clear that he was to attend meetings; otherwise, the maximum sentence under the agreement could be imposed. The reports from the program, to which the state referred at the sentencing hearing, indicated that the defendant had five absences ranging from February 6, 2013, until March 11, 2013. These absences occurred subsequent to the court's statement to the defendant on October 15, 2012, to attend meetings.

[8] The sentencing hearing was continued several times, once because of medical reasons on the part of the defendant and other times for which the record does not reflect the reason.

[9] At oral argument before this court, the state argued with respect to the defendant's sufficiency claim that the issue was not moot on the date of oral argument but would become moot on March 15, 2014, when the defendant would complete his one year of incarceration. There is an insufficient factual record before this court to dismiss the defendant's sufficiency claim on mootness grounds. Accordingly, we will address the merits of this claim.